## TWOGOOD v. STEPHENS *et al.*

1. **Lien:** EQUITABLE INTEREST. A judgment is a lien upon any equitable interest in land in the judgment debtor, which may be sold on execution; but is subordinate to vendor's liens and homestead rights existing prior to the judgment.

2. **Vendor and vendee:** FORFEITURE. A condition in a contract for the sale of real estate giving the vendor the power to declare the contract forfeited for a failure on the part of the vendee to make payment according to the terms thereof: *Held*, that the equitable interest of the

vendee continued until an action by the vendor to treat the contract as forfeited.

3. Judicial sale: ADEQUACY OF PRICE. That the interest in real estate sold under execution was an equitable one, which could at any time be terminated by the election of a vendor to treat the contract of sale to the judgment debtor as forfeited, and that it was charged with a homestead interest, will be considered by the court in determining a question as to the adequacy of the amount paid for such interest at a judicial sale.

4. —— REDEMPTION FROM VENDOR. The purchaser at a judicial sale of the vendee's interest in real property under a contract of sale, which may be forfeited at the election of the vendor, may, if the contract is enforced by suit against the vendee for the amount due, tender to the vendor the amount of the judgment recovered, and demand the conveyance to which the vendee would be entitled.

5. Homestead: ORDER OF SALE. It is the policy of the law to require all other property of the defendant in execution to be exhausted, before the sale of the homestead.

*Appeal from Benton District Court.*

MONDAY, JANUARY 8.

THE record, in its essential particulars, reveals the following state of case:

In April, 1852, the defendant, Andrew D. Stephens, purchased of Irvin D. Simison, the school fund commissioner of Benton county, the east half of section thirty-five, and the northeast quarter of the northeast quarter of said section thirty-five, all in township eighty-two (82), north of range twelve (12) west, being 360 acres, at $1.25 per acre, paying one-fourth of the purchase-money down, and giving his note for the residue ($337.50) at ten years, with ten per cent interest from date, payable annually on the 1st day of January in each year, at the same time entering into a written contract with the commissioner, by which he was to have a deed from the State, for said land, when the payments were made as specified, and, if default was made therein, the contract, as well as the payments which

may have been made, might be declared forfeited, and the land resold, or, at the option of the commissioner, the contract to be enforced at law. Stephens, being already in possession, continued his occupancy, improving a part of said land, and erecting thereon a homestead on the north one-half of southeast quarter of said section, which was duly platted and described, acknowledged and recorded April 16th, 1864.

Stephens, failing to pay the principal sum within the time prescribed, and being largely in arrears in the payment of the interest, proceedings were commenced to collect the same, and to foreclose his interest in said land, and on the 27th of September, 1862, a judgment was obtained against him for $791.14, and $55.55 costs.

Anterior to this, the plaintiff Twogood, having a claim against Stephens, sued and obtained judgment against him for $208.40 on the 5th day of March, 1859. Subsequently he levied on Stephens' equitable interest in said several tracts of land, and on the 29th of October, 1859, bid the same off in a lump, for the amount of his claim and costs, namely, $256.19, and in one year thereafter the sheriff made him a deed for Stephens' right, title and interest in said land.

On the 5th of January, 1864, thereafter, Twogood tendered to the board of supervisors of said county the full amount of the judgment, interest and costs which had been rendered as aforesaid in favor of the school fund aforesaid, namely, $950, which tender he still offers to make good; and he demanded from them a certificate of purchase that would entitle him to a patent from the State for said land; that upon the same day he also made a legal tender of the same amount, under like circumstances and conditions, to the clerk of the District Court of said county, both which tenders were refused.

On the 7th of December, 1863, prior to this tender, the

judgment in favor of the school fund was paid off and discharged in full. The plaintiff, Twogood, alleges that this payment was made by Stephens, but that he confederated with the clerk of the court and one Philip Clark to cheat and defraud him of the benefit of his purchase, by having the contract under which Stephens purchased, falsely assigned to Clark, and the certificate of the final payment made to the said Clark, as the party entitled to the deed from the State.

In consideration of which plaintiff asks, that the assignment of the contract aforesaid, and the issuing of the certificate of purchase to Clark, be severally declared void. and set aside; that the title to said land be declared to be in him, and that the requisite certificate of payment and ownership be awarded to him, that will entitle him to a patent from the State, and the defendants be restrained, &c.

The defense consists in a denial of the fraud; also a denial that the school fund judgment was paid by Stephens, but that it was paid by Clark, a creditor of Stephens, who it is alleged took an assignment of the contract of purchase from Stephens, in payment, of an indebtedness of $655, subject to said judgment. It is further set up as a defense, that the sale of Stephens' equitable interest under plaintiffs' judgment, was illegal and void. Lastly, a homestead right is interposed to the house and forty acres, by Stephens and wife.

The court, in its determination, sustain the homestead claim, award to plaintiffs the residue of the land, ignore Clark's right thereto as fraudulent, and enter a decree carrying out this, its decision in the premises. The plaintiffs and defendant Clark, both appeal.

*Thos. Corbett* for the plaintiffs.

*Preston, Grant & Smith* for the defendant.

LOWE, J. — There is no material disagreement about the facts, except that which relates to the charge of fraud, as specified in the foregoing statement. And as to that, we unite in the opinion that the same is not adequately and satisfactorily established by the testimony.

Assuming then, the *bona fides* of the transaction between Stephens and Clark, and looking at the facts attending the same, in connection with the other granted facts in the case, we ask, what are the respective rights and equities of the parties?

First, as to the status and rights of the plaintiff: Under the statute of this State, his judgment was a lien upon the
*1. LIEN: equitable interest.* equitable interest of Stephens in the premises, vendible under an execution, but subordinate to the vendor's lien and the homestead claim, if such a claim existed. The invalidity of the sale of this interest, by the
*2. VENDOR AND VENDEE: forfeiture.* sheriff under execution, to the plaintiff, is insisted upon, first, because at the time thereof Stephens had no interest, legal or equitable, for the reason that he had failed to comply with his contract in making the required payments, and thereby had forfeited all the equitable interest which he had in the land. The reply is, that while this might have been so by a disaffirmance of the contract on the part of the school fund commissioner, yet he did not do so, but elected to affirm and enforce the contract at law, which kept alive and made effectual Stephens' equitable interest until extinguished by foreclosure and sale.

Secondly, it is claimed that the lands with the improvements thereon were worth some $3,600; that they were
*3. JUDICIAL SALE: adequacy of price.* sold altogether regardless of their legal subdivision for the amount of plaintiff's judgment, which bore no equitable proportion to the value of the property. It may be replied to this that the legal title of the property was not, at the time of the sale, in Stephens,

the execution defendant; that his interest was not only an equitable but a contingent one, liable at any time, and especially at this time, to be extinguished by a declaration of forfeiture on the part of the school fund commissioner under the terms of the contract of sale. Not only so, but plaintiff's judgment lien, under which he sold, was unavailable to him without first paying off the school fund claim of $941, more or less, and it was, moreover, subject to the homestead right. Under these circumstances equity would hardly require the plaintiff in execution to bid anything more than the amount of his claim and costs, nor can we conceive how Stephens, the defendant in the execution, was prejudiced by such a sale; for if the land had been put up in parcels, no cautious or prudent man could have bid more than the amount of the Twogood judgment, when such purchase was liable to be defeated at any moment thereafter by a forfeiture. Twogood had no title, and could not get one for a year, under the statute, in order to give the judgment debtor and creditors an opportunity to redeem; during which time it was competent for the school fund commissioner to do acts under the contract which would have rendered Twogood's purchase at sheriff's sale a barren investment.

But Stephens' equitable interest in the property was not redeemed from said sale. A sheriff's deed thereof was made to Twogood at the end of the year. After this the commissioner, instead of forfeiting, affirmed and enforced the contract with said Stephens, by suit and judgment. This act of the commissioner rendered Twogood's purchase at sheriff's sale available to him, and he became, at once, vested with all of Stephens' equities in said lands, subject to the commissioner's judgment. Understanding his liability in this respect, he makes a tender of the amount of this judgment to the board of supervisors, as before stated, which

4. — redemption from vendor.

was refused. This tender he offers to make good, and this is all that he could do at the time to preserve his rights.

Now, let us see what are the rights of Philip Clark, and what is the legal position he occupies in this transaction. He was a creditor, also, of Stephens, to the amount of $655. To secure this claim, he offered and undertook to purchase of Stephens, his entire equitable interest in all this land, including the homestead of forty acres. He put in his own claim, and assumed and paid off the school fund judgment against Stephens, and took from the board of supervisors, a certificate of purchase entitling him to a deed from the State for the land. But what did he in fact get, in legal contemplation, by his purchase? He did not get the homestead right of Stephens, because the wife did not join in the sale, and now sets up in this proceeding her claim thereto. He did not get Stephens' equitable interest, for all that had already been extinguished, by the sheriff's deed to Twogood, except the homestead right. He claims, to be sure, not to have had any notice of the Twogood judgment, and the proceedings thereunder. But it is clear, that he was affected with constructive notice thereof, by the court record. As he is not implicated, however, in the charge of fraud, he has a right to get back the money he paid in discharge of the school fund claim, with interest thereon up to the date of Twogood's tender.

As respects the rights of Stephens and wife, they consist in holding the homestead of forty acres, subject to pay any balance there may be on the school fund judgment after first exhausting the other land.

The decree in this case should determine and settle the rights of the parties as above indicated.

That is to say, it should order the plaintiff to make good his tender and pay the amount to the clerk of the court for the benefit of Philip Clark. It should cancel and set aside the certificate of purchase heretofore issued by the

clerk to the said Philip, and a new certificate of pur-
chase issued to Twogood for all the land aforesaid,
except the forty acres, constituting Stephens' home-
stead, provided the said Clark shall, within twenty days,
elect to take the same in satisfaction or compensation for
the school fund claim, which he had tendered and paid.
If, however, he should express an unwillingness to do so,
then the school fund judgment, aforesaid, to be opened up
and an execution to issue thereon and levied upon the
property, exclusive of the *homestead*, first, the object being
to determine the question whether such levy and sale will
bring the amount of the school fund judgment, without
including the homestead property. If it does, upon the
bid of Twogood, whose payment on the tender already
advanced is to be credited thereon, then he, Twogood, shall
have a certificate entitling him to a deed from the State for
the land purchased, and Stephens a certificate for a deed
to the forty acres constituting the homestead.

But if Twogood shall be unwilling to bid the amount of
the school fund judgment for the property levied upon, and
some other person will, that person shall have the certificate
of purchase.

If it should be supposed that such an order in the decree,
would interfere unjustly with Twogood's vested rights
acquired at the sheriff's sale, when he purchased
Stephens' equitable interest, the answer is, that the
propriety of such an order is apparent from two
considerations, first, that it is the policy of the law, not to
allow a homestead to be levied upon and sold, even if
otherwise liable, until all other property of the defendant
in execution, is first exhausted; that this homestead right
is equal, if not superior in dignity to any other legal or
vested right, and should not be disturbed, short of a fair
sale to the highest bidder, of all the other property. The
second consideration is, that Twogood, after he had

5. HOME-
STEAD:
order of
sale.

obtained his deed from the sheriff, of Stephens' equitable interest in said land, which was about the first of November, 1860, waited till the 5th of January, 1864, before he offered to pay to the school fund commissioner the balance of the purchase-money due on said land. It is quite probable that if greater promptitude in this respect had been observed, this controversy would have been avoided. The delay, however, though great and unreasonable, is not, perhaps, to the extent of forfeiting his rights, but has the effect of lowering the grade of his equities, in a court of conscience, below Stephens' homestead right; and if he is not willing to pay as much as anybody else for the land in question, in order to protect the homestead, then he should surrender the benefits of his previous purchase at sheriff's sale of Stephens' equities.

Having said thus much parenthetically, by way of explanation, we proceed further to say, on the other hand, that if neither Twogood, or any one else, under the qualification suggested, is willing to bid off the land for the amount of the school fund judgment, then the property shall be sold for the best price it will bring, to the highest bidder, and the residue shall be made from a sale of the homestead, the surplus, if any, to be paid to Stephens.

With this modification, the judgment below will be affirmed, the costs of court below, as well as that of the appeal, to be paid in equal parts by Twogood, Clark and Stephens.

Affirmed.