## TURMAN *v.* FORRESTER.

Decided January 16, 1892.

1. *Mortgage of indemnity—Debt secured—Burden of proof.*

A note and mortgage for a definite sum of money, intended to indemnify the mortgagee for any liability he may incur as security for the mortgagor, can be enforced only to the extent such liability has accrued; and the burden is cast on the mortgagee to show that amount.

2. *Mortgagee's liability—Sale of property mortgaged.*

A mortgagee sold a portion of the property mortgaged and took a purchase note which he failed to collect, the purchaser being insolvent. *Held:* If the sale was really made by the mortgagee under his power as such, he should be charged with the price whether collected or not; but if the sale was made by the mortgagor and the deed executed by the mortgagee at his request, the latter is not chargeable for the loss unless his failure to collect was due to his culpable neglect.

APPEAL from *Scott* Circuit Court in chancery.

JOHN S. LITTLE, Judge.

On August 11, 1884, W. B. Turman conveyed to J. C. Gilbreath, by deed and bill of sale, all of his real and personal property. On September 10 following he executed to Gilbreath his promissory note for $9265 due four years from date, and took from him a bond for title or defeasance, conditioned for the re-conveyance of the land upon payment of the notes. In 1885 Gilbreath executed a mortgage of the land to the National Bank of Western Arkansas, which was foreclosed in 1887, and a portion of the lands, sufficient to pay the mortgage debt amounting to $6700, was sold. On March 18, 1887, Gilbreath executed a quit-claim deed of all the lands to T. M. Duncan. The latter joins Gilbreath's administrator, J. T. Forrester, in this suit upon Turman's note and to foreclose his mortgage, alleging a balance due, after allowing all credits, of $4840.

Turman answered that the conveyances of his property were made in pursuance of an agreement whereby Gilbreath assumed to pay all of his debts. The note was for a sum much larger than was really due, because the amount of

his debts was unknown, and the note was intended to cover all the debts. The execution of the mortgage by Gilbreath to the bank was without his consent, nor was he party to the foreclosure proceeding. He claimed credit for a mill and lot sold by Gilbreath for $1600.

The court found that the note for $9265 was for the purchase price of the lands; that Gilbreath's mortgage to the bank was executed by and with the consent and knowledge of Turman, and that Turman was entitled to credit for $6700, the amount for which a portion of the lands were sold at the foreclosure sale; that Turman was entitled to credits, in addition to those allowed by the administrator, for $1600, the amount of the purchase price of a mill and lot sold by Gilbreath, and $100 for money paid Gilbreath for Turman. The court gave judgment in favor of the administrator for $2942.34, and ordered the remaining lands to be sold if the amount was not paid by a certain time. From the decree against him Turman appealed, as did Forrester from the decree allowing Turman credit for $1600.

*Sanders & Watkins* and *T. P. Winchester* for appellants.

1. The testimony clearly shows that the note does not represent the consideration for the mortgage, and that the true consideration was certain debts to be thereafter paid by Gilbreath, the exact amount of which was not known. The debt *secured*, the *true consideration* for the mortgage, may always be explained. 1 Jones, Mort., p. 283, and cases cited in note 3.

2. As by the contract the lands may all be redeemed by the payment of a much smaller sum than that named as the purchase price, it devolves on appellees to show that the balance of the note is supported by an existing indebtedness. See also 1 Jones, Mortg., last clause, sec. 335 and note; 2 *id.*, sec. 1472, and notes.

*Clendening, Read & Youmans* for appellees.

1. Upon the answer as amended the burden of proof is on the appellant. 1 Ark., 228; 5 *id.*, 345; *ib.*, 133; 11 *id.*,

307; 21 *id.*, 69; 35 *id.*, 279; 3 So. Rep., 422; 41 La. An., 671. Appellant's deposition was inadmissible. Mansf. Dig., secs. 285–7.

2. The testimony shows that Turman had knowledge of the mortgage to the bank and ratified its execution. The proceeds of the sale were a proper credit on the note.

3. As to the sale of the mill sold to Pennington, the notes were never paid; the mill was burned; the maker is insolvent. One security was substituted for another, and the estate of Gilbreath should not be charged with the amount of the sale until collected.

HEMINGWAY, J. Turman contends that the court erred in its finding that his note referred to in the bond for title fixed the amount of his mortgage debt, and that it erred further in applying as a credit upon said note a sum on account of that part of the mortgaged property subsequently mortgaged by Gilbreath to the bank; while Gilbreath's administrator contends that the court erred in crediting upon said debt the sum for which a mill site and mill, being a part of the mortgaged property, was sold, the same being unpaid and the purchaser being insolvent. Both parties have appealed, and the court's action with reference to the matters stated is before us for determination.

In order to more easily determine those questions, it would be well to define the character of the transactions between Turman and Gilbreath of the 11th of August and 10th of September, 1884. In the light of Turman's evidence, which is conceded by counsel to be properly before us, we think it manifest that an absolute conveyance from Turman to Gilbreath was never contemplated by them. Turman had no money but large property, and was being pressed by his creditors, who had, to a large extent, reduced their claims to judgments. Gilbreath had agreed with him to pay his debts and save his property from sale; and in consideration of this promise, and, in order to secure to Gilbreath the repayment of such sums as he should thus pay, and to indem-

nify him against a liability as a surety upon an appeal bond,
the deed was executed; and for the same purpose and at
about the same time Turman executed to Gilbreath a bill of
sale of his personalty.   When the note was made there was
no indebtedness from Turman to Gilbreath; and it was exe-
cuted for some reason of fancied convenience not clearly
disclosed by the record.   Gilbreath subsequently paid Tur-
man's debts; but at that time he had paid nothing upon
them, and his liability upon one of them for a considerable
sum was then being contested upon an appeal to this court.
The bond for title was executed as an evidence of Turman's
equities; why the note was given is not explained.   Turman
says that the amount which Gilbreath was to pay was un-
certain; and this, in the nature of things, must be true, for
his liability on one debt for a large sum was then being con-
tested, and until it was determined the amount of his debts
could not be known.   He further says that the amount of
the note was fixed at the estimated aggregate value of all
his property, that sum being sufficient in any event to meet
the prospective liability.   His testimony is reasonable and
uncontradicted; and there are circumstances, such as his
continued possession of all the property, tending to cor-
roborate it.   We must therefore take it as true; and, so
treating it, we conclude that the transactions were in law a
mortgage, intended to secure to Gilbreath the repayment of
such sums as he should thereafter advance in paying Tur-
man's debts, and to indemnify him against loss as a surety
on the appeal bond.

There was no proof that Gilbreath had paid the amount
of the note on Turman's debts, except such as the note it-
self furnishes; while Turman testified that the amount paid
was much less, though it may be conceded that his evidence
in that regard is very indefinite and unsatisfactory.

It is contended, on behalf of the administrator, that the
note is *prima facie* evidence of the amount due, and that if
Turman contends that it is excessive, he must prove it by
definite and satisfactory testimony.   If the note had been

1. **Burden of proof as to amount of debt in mortgage of indemnity.**

given in settlement of an old indebtedness, or upon contracting a new one as an evidence of the debt, we think the contention would be tenable ; but neither was the case, and we cannot think that the same rule governs. The note was not taken as the evidence of a present debt, and as such is a mere fiction. When Turman shows this, it ceases to have any evidentiary force, and the burden is cast upon the mortgagee to prove the amount secured by the mortgage. Until something was advanced, he had no right to a foreclosure ; and when anything was advanced, the amount of it determined the amount for which a foreclosure could be had. Turman has shown that the note as an evidence of debt was a fiction, and that nothing was due when it was given ; and if anything afterward became due which entitled the mortgagee to a foreclosure, the burden is on him to show it. Mr. Jones says: " When the object is simply to indemnify the mortgagee for a liability he has incurred or may incur, the amount of the mortgage, or of the mortgage note, serves merely to limit the extent of the security. Upon the foreclosure of such a mortgage, the amount for which the judgment is to be rendered is the amount the mortgagee has been compelled to pay under the liability for which he was secured, with interest from the date of payment. The amount and date of the mortgage note are wholly disregarded in ascertaining this sum." 1 Jones, Mort., sec. 384 ; *Moses* v. *Hatfield*, 3 S. E. Rep., 538 ; *Vogan* v. *Caminetti*, 65 Cal., 438. We do not think the proof warranted the finding that the debt secured was the face of the note ; and inasmuch as the court took the note as evidence of that fact, and the proof outside is indefinite and unsatisfactory, we are of opinion that justice demands the taking of further proof upon that issue.

Although Gilbreath held but a mortgage upon the land, his mortgage of but a part of it would be effectual to convey his interest therein ; and as the bank is proceeding to foreclose said mortgage in a suit to which all the parties herein are parties, it is plain that Turman should have a

credit in this suit for the amount realized by a sale of his land in that proceeding. But until that suit is finally determined and a sale of the land in it made, it is impossible to fix the amount of such credit. If it has been finally determined when this case goes back, the amount of the credit may be easily ascertained ; if it is undetermined, the suits should be consolidated or this should await the determination of that.

If the sale of the mill was really made by the mortgagee under his power as such, he should be charged with the price for which it was sold, whether he collected it or not ; but if the sale was made by the mortgagor, and the deed executed by the mortgagee at his request in order to convey legal title freed from the mortgage, he should not be charged with the purchase price, though he took and held the note for the purchase money, unless his failure to collect them was due to his culpable neglect. In the latter case, the mortgagee, in effect, only consents to release one security upon a substitution of another ; and if the latter proves valueless without fault of his, he is not chargeable therefor. We think the sale of the mill was a sale by the mortgagor and comes within the latter class, and that the court erred in charging the price of it to the mortgagee, there being no proof that his failure to collect it arose from his culpable neglect.

2. Liability of mortgagee for sale of property mortgaged.

For the errors indicated the judgment is reversed, and the cause is remanded. For the purpose of ascertaining the amount of the mortgage debt to Gilbreath and the amount that should be credited thereon on account of the mortgage to the bank, further proof may be taken and such findings made as the proof warrants. In other respects a decree will be entered in accordance with this opinion, but in that regard the decree will follow the findings to be made.