### EMERSON v. KNIGHT, for use.

1. Where a mortgage is given to indemnify one who becomes a surety upon a bond in which the mortgagor is principal, a misdescription of the particular bond may be corrected by parol testimony so as to indentify the bond described in the mortgage with the one upon which the mortgagee became surety. And the mere misdescription of the bond will not have the effect to render the mortgage invalid as a lien upon the property described, either as to the mortgagor himself or his vendees.

2. The mortgage having been foreclosed and a fi. fa. issued upon the judgment of foreclosure, neither the judgment of foreclosure nor the fi. fa. was void because of mere irregularities in the foreclosure proceedings, nor because of defects therein which could have been amended had they been attacked by a timely special demurrer.

3. The evidence demanded the verdict which the court directed.

Argued June 10, 1907.—Decided February 8, 1908.

Claim. Before Judge Felton. Bibb superior court. December 19, 1906.

This case arose upon the interposition of a claim by Emerson to the levy of a mortgage fi. fa. in favor of R. L. Knight for the use of Leona Mathews, formerly Leona Kimbrell, and Walter Kimbrell, against Nisbet, administrator of J. T. Knight, deceased. The facts developed upon the trial of the case were briefly as follows: On March 17, 1899, J. T. Knight, principal, and R. L. Knight, security, executed and delivered to the ordinary of Bibb county an administrator's bond, the conditions of which were that

the said J. T. Knight should faithfully perform his duties as administrator of the estate of one Kimbrell, deceased. At or near the same time J. T. Knight executed and delivered to R. L. Knight a mortgage on certain lands, the same being the land in controversy. The conditions of this mortgage and the consideration therefor were as follows: "Should the said J. T. Knight save the said R. L. Knight harmless on account of his suretyship on the bond of J. T. Knight as trustee for Leona and Walter Kimbrell, . . and provided that said J. T. Knight executes faithfully all the duties required of him as such trustee, . . and save harmless said R. L. Knight on his suretyship on said bond, . . then this obligation shall be null and void." This mortgage was duly recorded in the year 1899. Subsequently J. T. Knight died, and Nisbet was appointed administrator on his estate. In 1903 the ordinary brought suit on the bond of J. T. Knight, administrator of Kimbrell, and obtained a verdict against Nisbet, administrator of J. T. Knight, principal, and R. L. Knight, security. In 1905 R. L. Knight, suing for the use of Leona Mathews, formerly Kimbrell, and Walter Kimbrell, foreclosed the mortgage executed in 1899 by J. T. Knight in favor of R. L. Knight, which mortgage was "conditioned to save said R. L. Knight harmless on account of his suretyship on the bond of J. T. Knight as trustee for Leona and Walter Kimbrell." It was alleged in the petition for foreclosure that a judgment was rendered "against the said R. L. Knight as surety on the aforesaid bond for the principal sum of $2,535, besides $1,109 interest." Rule absolute was granted in said foreclosure proceedings, which recites that the amount therein named was for "the principal, interest, and costs due on a certain judgment rendered against the said R. L. Knight as surety on the bond of J. T. Knight, trustee for Leona and Walter Kimbrell." It is conceded by the plaintiff in fi. fa. that the judgment here referred to was the judgment rendered against R. L. Knight as security on the administrator's bond of J. T. Knight. Execution issued on said rule absolute, and the fi. fa. was levied on the land in controversy. Emerson filed a claim to said land, and, on the trial of the issue thus raised, introduced a warranty deed to the claimant from J. T. Knight, embracing the land levied on. Said deed recites a consideration of $2,000, and was executed and recorded in the year 1900. The court admitted testimony to show

that the mortgage executed by J. T. Knight in 1899, "conditioned to save R. L. Knight harmless on account of his suretyship on the bond of J. T. Knight as trustee for Leona and Walter Kimbrell," was really intended to protect R. L. Knight as surety on the administrator's bond of the said J. T. Knight, upon which bond a recovery had been had against the principal and surety. The court directed a verdict in favor of the plaintiff in fi. fa. The claimant moved for a new trial, and, the motion being overruled, excepted.

*Nottingham & McClellan,* for plaintiff in error.

*W. J. Grace* and *R. L. Anderson,* contra.

BECK, J. (After stating the facts.)

1. The court below did not err in directing the verdict complained of in the motion for a new trial, and upon the direction of which error is assigned in the bill of exceptions. There was no issue of fact to submit to the jury. The mortgage upon which the fi. fa. was issued, as against which the claim was interposed, was a good and valid mortgage against the mortgagor. The essentials of a mortgage are prescribed in the Civil Code. (§ 2724) as follows: "It must clearly indicate the creation of a lien, specify the debt to secure which it is given, and the property upon which it is to take effect." There is no question in this case but that the property mortgaged was sufficiently described. The instrument clearly indicates the creation of a lien; and the contention that it was not valid, so as to indemnify the mortgagee against loss that might accrue to him as a surety upon the bond of his principal, must rest entirely upon the ground that it does not specify the debt to secure which it was given. This ground, however, is not tenable in the light of authority and the uncontroverted evidence in this case. The obligation to secure which the mortgage was given was one springing out of a contract to indemnify and save harmless the mortgagee on account of his having become surety on a bond in which the mortgagor was principal. The failure of the principal, the mortgagor, to save harmless the mortgagee, created the obligation, and the injury and loss resulting to the mortgagee because of his having become surety upon the bond was the measure of the amount of the debt.

Conceding that the statement in the mortgage of the particular kind of bond upon which the mortgagee became surety was a part

of the description of the obligation, and that the bond upon which he became surety was one given by the mortgagor as administrator and not as trustee, such a misdescription would not have the effect of invalidating the mortgage in all other respects valid. "No formal and exact description of the debt is essential, provided there is a debt between the parties capable of being enforced against the mortgagor or the property mortgaged. Literal exactness is not required." 1 Pingrey on Mortgages, 485. "A promissory note agreeing in many respects with the one described in the mortgage deed, though variant therefrom in some of its particulars, may be proved by parol evidence to be the note intended to be described in the mortgage. This is founded upon the principle, that a thing is to be regarded as certain which can be made certain, and parol evidence can be adduced to apply the contract to its subject; that where there is enough to put those concerned upon inquiry, the means of knowledge and knowledge itself are in legal effect the same. Parol evidence may be admitted to show that Ebenezer Hall 3d means Ebenezer Hall, and that a note was dated several months before." Ib. 497. "Clerical inaccuracies in the description of a debt will not affect the lien of a mortgage as against the mortgagor or subsequent judgment creditors of his, provided the debt is clearly identified as the one intended to be secured. . . Parol evidence is admissible to show that the note described in the mortgage is the one produced in evidence. Thus, where a note secured by a mortgage is, in some particulars, misdescribed, it may be shown by parol evidence that it is the one intended to be described." Ib. 495-496. "Parol evidence is admissible to identify the note, and show that the note produced is the one referred to in the mortgage. . . In general it may be said that a mortgage is not invalid, either between the parties or as to third persons, on account of uncertainty in the description of the debt, when, upon the ordinary principle of allowing extrinsic evidence to apply a written contract to its proper subject-matter, the debt intended to be secured can be shown." 1 Jones on Mortgages (6th ed.), 290.

In the case of Moses v. Hatfield, 27 S. C. 324 (3 S. E. 538), it was said, "It is contended that the court erred in receiving parol testimony to show what debt the mortgage was really intended to secure. Now, while it is quite true that a written contract can

not be contradicted or varied by parol evidence, yet such evidence is competent to apply a written contract to its proper subject-matter, as, for example, in case of a mortgage, to the debt really intended to be secured thereby." And in the case of Jones *v.* Guaranty & Indemnity Co., 101 U. S. 622 (25 L. ed. 1030), it was said, "A., as president of B., a corporation, applied to C. for a loan. The latter then advanced $50,000, taking therefor a note of B., payable to the order of D. & Co.,—of which firm A. was a member,—and bearing their indorsement. A. also stipulated to deliver to C. B.'s. mortgage on its real estate for $100,000, as security for said $50,000 and for any further loans from C. to B. The execution of the mortgage was assented to in writing by B.'s trustees and by A., who was its creditor to a large amount and the holder of nearly all of its capital stock. The mortgage described the individual obligation of A. as the liability to be secured, but recited that its execution was authorized to secure a loan of $100,-000; that A. had given to C. his personal bond in that sum to secure advances made as therein stipulated. It was conditioned for the payment by B. of the amount that might be due upon the instrument secured by it. The bond bears even date with the mortgage. It recites that it was given to cover any advances made to A. by C. to the amount of $100,000 or less, on condition that such advances and their payment should be indorsed thereon, as fixing the amount of indebtedness, for all of which certain premises that day conveyed by B. to C. by indenture of mortgage shall be liable. Upon the delivery of the bond and mortgage to C., B.'s note for said $50,000 was renewed, and the amount thereof indorsed on the bond as an advance of that date. The bond shows two other advances to A. of $25,000 each, for one of which a note of B. for that amount payable to his order, and duly indorsed, was delivered as collateral, and for the other a warehouse receipt for oil, given by B. to him. The receipt proved worthless, and the note was subsequently renewed. None of B's. notes were paid, but the money advanced to A. was used for the benefit of B. *Held,* 1. That it was the debt of B. and not that of A. which was intended to be, and is, secured by the mortgage. 2. That parol evidence was admissible to show such intent." And in the case last referred to it was further said, "Evidence can be adduced to apply the contract to its subject; that where there is enough to

put those concerned upon inquiry, the means of knowledge and knowledge itself are, in legal effect, the same thing." See in this same connection the numerous cases cited in the note following the case of Bowen v. Ratcliff, 140 Ind. 393 (49 Am. St. Rep. 203, 39 N. E. 860). See, in this connection, the cases of *Sutton* v. *Sutton,* 25 *Ga.* 383, and *Hester* v. *Gairdner,* 128 *Ga.* 531 (58 S. E. 165).

If the reasoning is sound whereby the conclusion is reached that aliunde evidence may be heard to correct a misdescription of the debt in cases where mortgages are given to secure the payment of specific debts, a fortiori such evidence is competent to apply the terms of the contract to the subject-matter thereof in cases like that under consideration. In this case the mortgage was executed under the provisions of the Civil Code, §2733, which declares that "Mortgages may be taken by sureties and guarantees to indemnify them against loss." In the case at bar the essence of the contract was to make good an agreement of indemnity. The plaintiff in error, the purchaser of the land described in the mortgage, had record notice that the land was under mortgage to secure that agreement of indemnity, and, having notice of that fact, he was put upon notice of the existence of a subsisting lien upon the property purchased. And, as was said in the case of Jones v. Guaranty & Indemnity Co., supra, "Where there is enough to put those concerned upon inquiry, the means of knowledge and knowledge itself are in legal effect the same."

We are satisfied as to the soundness of the conclusion reached in this case, that the mortgage was a good and valid lien as against the purchaser of the property from the mortgagor, and have so held without reference to the principle and to the cases holding that the position or relation of administrators and executors to the estate or property which it becomes their duty to administer is one of trust in the broad sense of that term.

2. The contention of the plaintiff in error, that the judgment of foreclosure and fi. fa. issued thereon were void, is without merit. We have already seen that aliunde evidence was admissible to show the identity of the bond described in the mortgage with that upon which the mortgagee became surety. And if the alleged usees were improperly made parties, that was a defect which could have been taken advantage of by special demurrer urged to

the petition to foreclose. And the other alleged defects in the petition to foreclose were such as could have been amended had they been pointed out at the time of the trial of the foreclosure proceedings. The vulnerability of the foreclosure proceedings resulting from mere irregularities can not be taken advantage of by the claimant so as to inflict a death wound upon those proceedings, however inviting to attack by the mortgagor it might have rendered these had he seen fit to contest them.

3. Certain portions of the evidence introduced by the plaintiff in fi. fa. may have been open to the objection that they were immaterial and irrelevant; but the uncontroverted evidence which was properly admitted demanded the verdict which the court directed, and his judgment will not be disturbed.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*