LIERMAN, Appellant, vs. O'HARA and others, Respondents.

*March 12—April 8, 1913.*

*Chattel mortgages: Validity: Failure to sign secured note: Sale with assent of mortgagor: Affidavit not required.*

1. A chattel mortgage is not rendered void by the mere fact that the promissory note which it was given to secure was, through inadvertence, not signed by the debtor, where such unsigned note clearly states the amount of the debt and the terms and conditions agreed upon for its payment and, except as to the signature, is clearly described in the mortgage.
2. Ch. 122, Laws of 1903 (sec. 2316c, Stats.), refers to a *hostile* taking and sale of property under a chattel mortgage, and is inapplicable where the mortgagor assented to the sale.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

This is an action for the recovery of damages for the unlawful taking and converting by defendants to their own use of a roan mare alleged to be the property of the plaintiff and of the value of .$150.

It is alleged that prior to September 16, 1910, the plaintiff pastured this mare on his brother *Albert Lierman's* farm in Sheboygan county and that defendants on that day wrongfully took possession of her and converted her to their own use, to the plaintiff's damage in the sum of $225.

It appears that *Thomas O'Hara* and Adam Trester at the time of the transactions here involved had been duly elected and were acting as justices of the peace of Sheboygan county; that *A. A. Hoehne* was the duly elected sheriff of this county; that *George Goodel* was the undersheriff; and that *E. H. Haehnke* was acting as a deputy sheriff.

In May, 1908, one Max Neitzke of the city of Milwaukee was indebted to one Fred Steinmueller of the same place in the sum of $690.10. On May 3, 1908, Neitzke, through his attorney, pursuant to an agreement of the parties, delivered

to Steinmueller a paper writing in the form of a promissory note stating that Neitzke was indebted to Steinmueller $690.10, and a chattel mortgage. The mortgage was properly executed and signed by Neitzke, covering among other property the roan mare here in question; but the writing in form of a promissory note was not signed. The mortgage was duly recorded in the office of the city clerk of the city of Milwaukee May 29, 1908, and an affidavit of the renewal thereof was filed on the 2d day of May, 1910, in the city clerk's office.

On March 31, 1910, Neitzke by bill of sale purported to convey the unincumbered title to the mare in question to the plaintiff, *Ernst Lierman,* and received a credit from plaintiff of $100 on a judgment plaintiff had against him. This bill of sale was not recorded. Two days thereafter plaintiff sent the mare to the farm of his brother *Albert Lierman* at Random Lake, where she was kept until September 16, 1910. On this day Steinmueller, the mortgagee, and *Haehnke,* as deputy sheriff, took the mare from *Albert Lierman's* possession under a proceeding in replevin issued by *O'Hara* as justice of the peace. On September 20th, three days before the return day of the replevin proceeding under which *Haehnke* claimed to hold the mare, Steinmueller demanded possession of her from him upon the ground that the replevin proceeding before Justice *O'Hara,* which was dismissed on September 23d for want of prosecution, was void. *Haehnke* refused to surrender possession of the mare.

On September 22d, upon Steinmueller's application, a warrant of replevin was issued by Justice Adam Trester to obtain possession of the mare from *Haehnke. Goodel* under this writ took possession of the mare. On September 26th *Albert Lierman* became a party to this action, claiming a lien for the feed and care of the mare in the sum of $100. He appeared by Kanneberg & Heilbron, attorneys, who also represented the defendant *Haehnke, Lierman* claiming and al-

leging that he was entitled to possession of the mare under the right of lien as above stated and the defendant *Haehnke* alleging that he was entitled to possession of the mare under the writ of replevin issued by Justice *O'Hara.* After trial of this action judgment was entered awarding possession of the mare to the plaintiff Steinmueller as the mortgagee of Neitzke. An appeal was taken from this judgment to the circuit court for Sheboygan county, where the action is still pending. The foregoing are the material facts relied on by the defendants to justify their taking possession of the mare and upon which they deny any liability to the plaintiff for a wrongful taking and conversion of her.

The instant action was tried in circuit court to a jury, who rendered a special verdict finding, in substance, (1) that Steinmueller did not make demand for the mare from *Albert Lierman* prior to commencing suit before Justice *O'Hara;* (2) that the purported promissory note and the chattel mortgage were not delivered by Kinney to Steinmueller without Neitzke's consent; (3) that the mare was worth $150; (4) that plaintiff's damages for such taking and keeping of the mare from and after September 16, 1910, amounted to $30.18. The court awarded judgment dismissing the plaintiff's complaint with costs. This is an appeal from such judgment.

The cause was submitted for the appellant on the brief of *Kanneberg, Cochems & Wolfe* and *H. H. Heilbron,* and for the respondents *O'Hara, Haehnke,* and *Hoehne* on that of *Lorenz & Lorenz.*

SIEBECKER, J. The main contention of the plaintiff is that the court erred in holding that the mortgage from Neitzke to Steinmueller was a valid instrument. The mortgage was properly executed and recorded and states that it was given to secure an alleged promissory note of $690.10. A written paper in the form of a promissory note for this amount and

payable to Fred Steinmueller had been drawn, but was not signed by Max Neitzke. It, together with a chattel mortgage, was delivered to Steinmueller, who accepted them without inspection in the belief that they were properly executed and that they expressed the contracts between himself and Neitzke, his debtor. It is now claimed by the plaintiff that the omission to sign this intended promissory note renders the mortgage void and of no effect, and that the defendants, when they took possession of the mare in proceedings based on this mortgage, had no authority or right so to take her and hence were guilty of a wrongful taking and conversion of plaintiff's property. The case of *Follett v. Heath,* 15 Wis. 601, is relied upon for support of this claim. As stated in *Paine v. Benton,* 32 Wis. 491, 495:

"The rule of *Follett v. Heath* is not to be extended beyond the facts in the case then before the court. The facts there were, that the mortgage gave a totally false description of the note intended to be secured, or which was so claimed. The description was false and foreign in every particular, save that the names of the parties to the note, maker and payee, were correctly given. The note described differed, in amount, date and time of payment, altogether from that held by the mortgagee."

In the instant case there is no such infirmity in the transaction between the parties. There is no dispute but that the mortgage correctly describes the written paper except as to the signature, and correctly states the amount of the debt due Steinmueller from Neitzke and the terms and conditions agreed on by the parties for payment of the debt. It is manifest that Neitzke, through inadvertence, omitted to sign this intended promissory note as the parties had arranged, and that on this account it never became a promissory note. It is, however, a correct memorandum of the amount of Neitzke's indebtedness to Steinmueller and expresses the terms and conditions agreed upon by the parties for its payment, and corresponds with the description of it in the mortgage, ex-

cept that it is not signed. . From the undisputed facts in the case it is obvious that, although the writing is not an executed promissory note corresponding . with the provisions of the mortgage, the mortgagor intended to secure his indebtedness to the mortgagee, as stated in the mortgage and the unsigned writing which refers to the existing indebtedness intended to be secured.    The written memorandum can properly be treated as evidence of the debt which the mortgage was given to secure.    Under the facts and circumstances the omission of Neitzke to sign this paper did not mislead any person. The conditions in the mortgage and the contents of this writing expressing the terms of payment of this debt correspond with sufficient accuracy to show the indebtedness which the parties sought to cover and secure by the mortgage.    The discrepancy may be disregarded as not necessarily fatal to the validity of the mortgage.    *Weber v. Illing,* 66 Wis. 79, 27 N. W. 834; *Rock v. Collins,* 99 Wis. 630, 637, 75 N. W. 426; *Lee v. Fletcher,* 46 Minn. 49, 48 N. W. 456.

It is urged that the mortgage was duly paid and canceled before Steinmueller took any steps to get possession of the mare, because he failed to file an affidavit, as required by ch. 122, Laws of 1903, within ten days after selling another horse covered by the mortgage.    The evidence shows that the mortgagor assented to have this horse sold under the mortgage and the proceeds applied in part payment of his debt. Under such circumstances the mortgagee is not required to file the affidavit specified in this statute.    *Hammel v. Cairnes,* 129 Wis. 125, 107 N. W. 1089; *F. A. Patrick & Co. v. Deschamp,* 145 Wis. 224, 129 N. W. 1096.

We find no reversible error in the record.

*By the Court.*—Judgment affirmed.