Willie **HOLLY**

v.

**W. Frank SMYTH, Jr.**, Superintendent of the Virginia State Penitentiary.

Civ. A. No. 3020–M.

United States District Court
E. D. Virginia,
Richmond Division.

Feb. 13, 1961.

F. D. G. Ribble, Daniel J. Meador, Charlottesville, Va., Evans B. Brasfield, Richmond, Va., for petitioner.

Reno S. Harp, III, Asst. Atty. Gen. of Virginia, for respondent.

LEWIS, District Judge.

Petitioner commenced this habeas corpus proceeding in forma pauperis in this Court in November 1959. He alleged that he was being held in violation of the United States Constitution under two recidivist sentences imposed by a Virginia court, one for ten years in 1951, and another for fifteen years in 1957 which were void under the Fourteenth Amendment. The Court dismissed the petition and denied the writ on the ground that the said petition failed to state any ground valid in law for the issuance of the said writ or to establish that he is unlawfully detained. This Court also denied a certificate of probable cause required for appeal under Title 28 U.S.C. § 2253.

The petitioner then sought review in the United States Court of Appeals for the Fourth Circuit. That Court considered the case on its merits and a certificate of probable cause was issued.

The Circuit Court of Appeals in reversing and remanding the case concluded that the petitioner should be granted a hearing, with counsel, and an opportunity to establish the facts alleged in his petition, and if it be determined that he was not represented by counsel at the 1942 trial, then the District Court

should grant him appropriate relief. Holly v. Smyth, 4 Cir., 280 F.2d 536.

In accordance with that mandate, this Court appointed eminent counsel to represent the petitioner, namely, F. D. G. Ribble, Dean of the School of Law, University of Virginia, Daniel J. Meador, Esquire, Professor of Law, University of Virginia, and Evans B. Brasfield, Esquire, of the Richmond bar, and set the matter for hearing on the merits.

At that time counsel for petitioner, with leave of Court, asserted, as further grounds for the issuance of the writ, that petitioner had no counsel and was unable financially to obtain any in the 1951 and 1957 recidivist proceedings, and hence both recidivist sentences are void under the Fourteenth Amendment.

Respondent's answer to the amended petition asserted three defenses:

(1) A denial of the allegations;

(2) An averment that petitioner has failed to exhaust his state remedies as required by Title 28 U.S.C. § 2254;

(3) The allegations of the amendment are unsupported in law.

Subsequent thereto, with leave of Court, the respondent filed an amended answer to the amended petition, admitting the petitioner had no counsel and was unable financially to obtain any at either of the recidivist proceedings.

Prior to hearing the matter upon the merits, the District Court, at the request of the petitioner, directed that subpoenas be issued and served at the expense of the United States on Benjamin Skeeter and Vernon Lee Riddick, of Portsmouth, Virginia, commanding said persons to appear in this Court to testify on behalf of the petitioner. The witnesses were brought to Richmond, at Government expense.

During the hearing on the merits all pertinent parts of the record in the 1942 trial and the 1951 and 1957 recidivist proceedings, and the prison records of the petitioner were introduced in evidence. Counsel for the petitioner, in support of the allegations in the petition, called the petitioner and his sister to testify.

The petitioner stated he was seventeen years of age in 1942; that he was an escapee of the Virginia Industrial Home at the time he was arrested on the five charges of store breaking in 1942; that he plead guilty in two cases and not guilty in the other three; that his case was heard after that of the co-defendants; that the co-defendants had counsel; that he did not have counsel and was not asked by the Judge if he wanted the Court to appoint counsel for him; that his trial lasted but a short time; that no witnesses were called or heard by the Court; that he was sentenced to five years in the penitentiary. The petitioner's version of what happened, in his own words, is quoted below.[1]

1. "Q. Well, how did it happen? A. I was in it in the beginning, when all four of us walked before him and they asked for the reading of the papers and said, 'How do you plead, guilty or not-guilty?' And then the other three sat out in the middle of the floor, I sat against the wall. After hearing their part, they asked me if I had anything to say and I stood up and said, 'No, I don't have anything to say.'

"Q. After he had heard from the three of them, he then asked you if you had anything to say? A. Yes, sir.

"Q. Then you went to the latrine? A. No, sir.

"Q. Well, what happened? A. I told them, 'No, sir, I don't have anything to say,' and then I sat back down, and then I got up and went to the latrine.

"Q. And after you came back, after the other boys were sentenced, he then called you up in front of him? A. Yes, sir.

"Q. What did the judge say then, to the best of your recollection? A. He said, 'I find you guilty.'

"Q. He just called you up and said, 'I find you guilty?' A. Yes, sir.

"Q. That is your best recollection? A. He called me up and asked me did I have anything to say, like I told you before. He said, 'Do you have anything to say?' I said, 'No, sir.' He said, 'I find you guilty on five counts and sentence you one year on each count, five years total, in the penitentiary.'

"Q. That is your best recollection of what happened that morning? A. Yes, sir."

In rebuttal the petitioner denied that he knew W. N. Holcombe, the owner of one of the stores broken into; that he ever worked for Holcombe; that William T. Parker represented him during the 1942 trial.

The petitioner's sister, then fourteen years of age, stated she was present in 1942 when her brother was tried. When asked, "Did the Court appoint a lawyer for him?", she answered, "Not that I knows of, he didn't." This witness was vague and uncertain as to when, where and what took place during the trial in question. She subsequently married one of the co-defendants, namely, Benjamin Skeeter.

The respondent called the Chief Deputy Clerk of the Court of Hustings for the City of Portsmouth, who testified that the criminal orders of that Court in 1942 did not, in any case, recite whether or not the defendant had counsel and that as a consequence thereof she could not state as a fact whether or not the petitioner had counsel, either private or court-appointed.

W. N. Holcombe, a witness for the respondent, testified that he was the owner of a garage in Portsmouth that was broken into in 1942; that he remembered the incident well because his deceased son was a close friend of William T. Parker, the attorney who represented Mr. Holly in the proceedings. He stated that he remembered testifying in the matter before the Court and being examined by Mr. Parker. He further stated that he knew Willie Holly (petitioner) very well because Willie had worked for him for several months prior to the date his garage was broken into. He further identified the petitioner as being the same Willie Holly who worked for him in 1942.

William T. Parker, an attorney practicing in Portsmouth for the past twenty-eight years, testified that although his personal records did not date back to 1942, he recalled the general details of the trial and was very much of the opinion that he represented Willie Holly

therein. He stated that he knew Willie Holly and identified the petitioner as being the same person he knew as Willie Holly during the 1942 trial.

Lawrence W. I'Anson, the presiding Judge of the Hustings Court of Portsmouth, Virginia, in 1942, now a Justice of the Supreme Court of Appeals of Virginia, testified that he had no independent recollection of the 1942 trials; that he did not know a man by the name of Willie Holly. However, he remembered the name and checked the docket and found that he had been tried in the Court of Hustings for the City of Portsmouth some time in 1942.

Justice I'Anson further stated that in all felony cases he asked each defendant "if he had a lawyer and, if he did not, if he were able to employ a lawyer, and if he said that he was not able to employ a lawyer, I would ask him if he would like for me to appoint a lawyer to represent him. In ninety-nine cases out of a hundred, the response was, 'I would like for the Court to appoint a lawyer.' In the other case, the one percent, sometimes the prisoner would say, 'Well, I don't know,' and then I would state to him that he was entitled to a lawyer, that he should have a lawyer and that I thought that he should have a lawyer appointed to represent him, and each time the defendant would say, 'I would like for the Court to appoint a lawyer,' which I would do. I would explain to each defendant the nature of his case, the fact that the grand jury had returned an indictment against him, and I would explain the offense of which he was charged. I made it a practice of appointing a lawyer for every felon who did not have a lawyer of his own choosing."

He also stated that in handling juveniles who had been sent on to the grand jury by the Juvenile Court and had been indicted, he was more careful "because I took into consideration the youth of the individual and the necessity and the greater importance that one who was unacquainted with criminal proceedings should be fully advised of his rights, fully protected"; that he would not appoint

a lawyer to represent several defendants charged with the same crime without having the attorney talk with the defendants and advise the Court whether or not there was any conflict of interest and whether or not there was any objection to the same lawyer representing the several defendants.

When asked, "Even though you have no independent recollection of this hearing, assuming there were not guilty pleas to three of the charges in the case of Willie Holly, would it have been possible for you to have called this man up and sentenced him without taking any testimony or having any hearing whatsoever?", Justice I'Anson answered, "No, sir, I am absolutely certain of that. That has never happened in my court."

After both parties had rested and during argument of counsel, the Court commented upon the failure of counsel for the petitioner to call several witnesses who then were in the court room. Whereupon, counsel requested leave of Court to reopen the case.

The case was reopened and petitioner's mother was called as a witness. She stated she was present during Willie Holly's trial; that she did not have any money to get him a lawyer; that she did not know too much of what happened because she got up and went out because of what the Judge said.

It should be noted that Benjamin Skeeter and Vernon Lee Riddick were not called as witnesses for the petitioner. These men were co-defendants in the 1942 trial. They had signed affidavits which were attached to the original petition and were subpoenaed and were brought to Richmond at Government expense at the request of the petitioner.

■ Under these circumstances the Court must presume that their testimony would not have been favorable to the petitioner. Jeffreys v. O'Neal, 4 Cir., 64 F.2d 284.

■ The petitioner, to be entitled to a writ of habeas corpus, must prove his case by a preponderance of the evidence. United States ex rel. Jackson v. Brady, 4 Cir., 133 F.2d 476, certiorari denied 319 U.S. 746, 63 S.Ct. 1029, 87 L.Ed. 1702.

■ This he has failed to do. To the contrary, upon consideration of all of the evidence the Court is of the opinion that Willie Holly (petitioner) was represented by able and experienced counsel in the 1942 trial, heard before the Hustings Court of the City of Portsmouth, Virginia, and that none of his constitutional rights were abridged or denied.

Nevertheless, counsel for petitioner earnestly contend the writ should be granted because the respondent in his amended answer now admits the petitioner did not have counsel in either the 1951 or 1957 recidivist proceeding. (He is now confined by virtue of the 1951 sentence.)

■■ The respondent contends that a writ should not be issued on this ground because the petitioner has failed to exercise his state remedies as required by Title 28, U.S.C. § 2254. Although this precise question might not have been raised in the original petition filed in this Court or in the original petition filed in the Virginia state court, it no doubt would be a useless and time-consuming procedure to require the petitioner to file another petition in the state court as the state has admitted that petitioner did not have counsel in the recidivist proceedings and contends that the failure to furnish counsel is no ground for granting the relief sought. The exhaustion doctrine is not absolute or rigid; it rests on comity. Darr v. Burford, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761. See also Frisbie v. Collins, 342 U.S. 519, 72 S. Ct. 509, 96 L.Ed. 541.

■ Lack of counsel in a recidivist proceeding where no exceptional circumstances exist does not invalidate the sentence under the Fourteenth Amendment. Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683. See also Lee v. Smyth, 4 Cir., 262 F.2d 53.

■ It should be noted that both of the orders of the Circuit Court of the City of Richmond, finding the petitioner guilty as a recidivist on the 27th day of June,

1951, and again on the 11th day of December, 1957, and imposing sentence, recite that "the information was read to the accused, that he was cautioned as to his rights, that he acknowledged in open court that he was the person named in the several records of conviction". (Exhibits 2 and 3). Thus, from the record it is clear that the only question before the state court was one of identity. This the petitioner admitted and does not now deny.

The same question has heretofore been raised before this Court and it was held the fact petitioner was without counsel (in a recidivist proceeding) and was not advised of his right thereto, did not authorize his release by a Federal Court on habeas corpus. This decision was affirmed on appeal. Harvey v. Smyth, 4 Cir., 255 F.2d 21.

There being no exceptional circumstances alleged or found to exist, the petition will be dismissed, and it is so ordered.