**TROPICANA SHIPPING, S.A., Appellant,**

v.

**EMPRESA NACIONAL "ELCANO" de la MARINA MERCANTE, Appellee.**

No. 22394.

United States Court of Appeals
Fifth Circuit.

Sept. 12, 1966.

---

See also D.C., 252 F.Supp. 399.

Walter Carroll, Jr., Benjamin Yancey, New Orleans, La., for appellant.

Henry J. Read, New Orleans, La., J. Bond Smith, Jr., New York City, for appellee.

Before JONES and GEWIN, Circuit Judges, and HUNTER, District Judge.

GEWIN, Circuit Judge:

This appeal is from a decree of the United States District Court for the Eastern District of Louisiana foreclosing a ship mortgage on the MV Tropicana and ordering her sale.[1] The ship was built by the libelants, Empresa Nacional "Elcano" de la Marina Mercante (Elcano), a Spanish corporation indirectly owned by the Spanish government, for the respondents, Tropicana Shipping, S. A. (Tropicana), a Panamanian corporation organized to own and operate the MV Tropicana. The vessel is documented, and the mortgage duly recorded under the laws of Greece; her home port is Piraeus, Greece.

The mortgage was executed and delivered as security for a loan of $3,000,000 from Elcano to Tropicana pursuant to an agreement entered into in October 1962.[2] It provided for payment in two installments, the first in the amount of $1,627,500 due on April 1, 1964, and the second in the amount of $1,762,500 due on October 1, 1965. No payment was ever made on the mortgage debt. The mortgage contained a 60-day grace period so that default did not occur until June 1, 1964. The mortgage stated that the debt secured was evidenced by two promissory notes, one for each installment, executed by Tropicana and payable to Elcano. During May 1964, Tropicana approached Elcano about altering the terms of payment to give Tropicana more time in which to make the payment of the first installment. Elcano rejected all such overtures. The mortgage contained an acceleration clause on default in payment of the first installment. After Tropicana failed to make the first payment, Elcano instituted this suit to foreclose the mortgage by attachment of the ship in the port of New Orleans under an admiralty warrant issued by the District Court on June 6, 1964. 46 U.S.C. §§ 951–954, 41 Stat. 1000, as amended, 68 Stat. 323.

The notes mentioned in the mortgage were not produced at the trial and a factual dispute arose as to the delivery of the notes by Tropicana to Elcano. Tropicana urgently insisted that the mortgage notes were delivered to Elcano, but Elcano just as strenuously denied receipt of them. After conducting a full hearing, the trial court found as a fact that there were no promissory notes delivered by Tropicana to Elcano at the time of the delivery of the mortgage or at any other time. Tropicana here contends that the finding of the trial court with respect to delivery of the notes was clearly erroneous. Therefore, Tropicana argues, since there were notes which were not produced the suit was in reality one to collect money had and received; or in the alternative, a proceeding to reform the mortgage and therefore, the Admiralty Court had no jurisdiction. Further, it is asserted that the trial court erred in not requiring Elcano to furnish Tropicana with a commercially acceptable lost instrument bond as a condition of fore-

1. The ship was sold at a marshal's sale and purchased by the libelant for $2,000,000. The purchase price was credited against the judgment of $3,360,000.

2. The agreement also contemplated that Elcano would guarantee an additional loan to Tropicana of $1,700,000 obtainable three years after delivery of the ship. The agreement further extended the delivery date from August 31, 1962 to November 15, 1962.

closure. Finally, contending that the entire proceeding was null and void for lack of jurisdiction and that reversal is required because of the above mentioned errors, Tropicana contends that it should have been awarded damages for the unlawful seizure of its vessel. In support of its jurisdictional argument, Tropicana also asserts that the trial court abused its discretion in failing to decline jurisdiction because no interests of American citizens were involved. We find no érror and affirm.

■ We are unable to agree with Tropicana's contention that this is a suit for money had and received. An examination of the issues and evidence presented clearly demonstrates that such was not the nature of the suit. That argument is based upon the contention that the notes were actually delivered by Tropicana to Elcano and were in existence but not produced in the foreclosure proceeding. Likewise, we must reject the contention that this suit was one to reform the mortgage in question. Assuming as true the contention of Elcano that it never received the notes, Tropicana argues that the mortgage is meaningless, and, therefore, this must be considered as a suit to reform the mortgage. Even so, we would not be inclined to restrict the jurisdiction of admiralty courts to the narrow concept delineated in Tropicana's argument. See Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1956); Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,

339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206; Hadjipateras v. Pacifica, S.A., 290 F.2d 697 (5 Cir. 1961); Gilmore & Black, The Law of Admiralty 37–39 (1950). Moreover, we are unable to find any abuse of discretion by the trial court in failing to decline jurisdiction because the interests of American citizens were not involved. Brandon v. S. S. Denton, 302 F.2d 404 (5 Cir. 1962) citing with approval Rederiaktierbolaget v. Compania de Navegacion, D.C., 139 F.Supp. 327. The enactment of the Ship Mortgage Act of 1920, 41 Stat. 1000, 46 U.S.C. §§ 911–984, and the 1954 amendment, 68 Stat. 323, 46 U.S.C. § 951,[3] manifests a Congressional policy to confer jurisdiction on the federal courts in controversies arising out of properly recorded ship mortgages as a means of "affording substantial security to persons supplying essential financing" to the shipping industry. Merchants & Marine Bank v. The T. E. Welles, 289 F.2d 188, 193–194 (5 Cir. 1961); W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, 155 F.2d 321 (2 Cir. 1946); Chemical Bank New York Trust Co. v. S. S. Westhampton, 231 F. Supp. 284 (D.C., 1964); Libel of Pilgrim Trust Co. v. The Frances C. Denehy, 94 F.Supp. 807 (D.C., 1950). While the primary purpose of the statute and the 1954 amendment was to assist American mortgagees, the clear language of the statute encompasses both American and foreign mortgagees. Brandon v. Denton, supra.

■ We turn now to Tropicana's argument that Elcano is precluded from

3. Section 951 provides substantially as follows:

"A preferred mortgage shall constitute a lien upon the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by such vessel. Upon the default of any term or condition of the mortgage, such lien may be enforced by the mortgagee by suit in rem in admiralty. Original jurisdiction of all such suits is granted to the district courts of the United States exclusively."

*     *     *     *     *

"Foreign ship mortgages. As used in sections 951–954 of this title, the term 'preferred mortgage' shall include, in addition to a preferred mortgage made pursuant to the provisions of this chapter, any mortgage, hypothecation, or similar charge created as security upon any documented foreign vessel * * * if such mortgage, hypothecation, or similar charge has been duly and validly executed in accordance with the laws of the foreign nation under the laws of which the vessel is documented and has been duly registered in accordance with such laws in a public register either at the port of registry of the vessel or at a central office; and the term 'preferred mortgage lien' shall also include the lien of such mortgage, hypothecation, or similar charge * * *."

foreclosing the mortgage until it produced the notes, or provided Tropicana with a lost instrument indemnity bond to insure Tropicana against future liability on the notes. As to this issue it is well established that the validity of a mortgage is dependent only on the existence of a debt actually secured by the mortgage and not on the description of the debt contained in the instrument. In re Farmers' Supply Co., 170 F. 502 (S.D. Ohio 1909); Emerson v. Knight, 130 Ga. 100, 60 S.E. 255 (1908); Finken v. Schram, 212 Iowa 406, 236 N.W. 408 (1931); Lee v. Fletcher, 46 Minn. 49, 48 N.W. 456, 12 L.R.A. 171 (1908); Lierman v. O'Hara, 153 Wis. 140, 140 N.W. 1057, 44 L.R.A.,N.S., 1153 (1913). The actual existence of a subsisting debt at the time of foreclosure may be established by parol testimony, Turman v. Forrester, 55 Ark. 336, 18 S.W. 167 (1892); McEwen v. Growers' Loan Guaranty Co., 104 Fla. 176, 139 So. 805 (1932); Moses v. Hatfield, 27 S.C. 324, 3 S.E. 538 (1887); F. Groos & Co. v. First Nat'l Bank, 72 S.W. 402 (Tex.Civ.App.1903), and where it is established that the notes or bonds, or other evidence of indebtedness described in the mortgage did not exist, the mortgage may, nevertheless, be foreclosed. Moses v. Hatfield, supra; Peoples Nat'l Bank & Trust Co. v. Pora, 212 Ind. 468, 9 N.E.2d 83, 111 A.L.R. 1402 (1937); Jones on Mortgages § 353. In the case before us the mortgage indebtedness continued until the commencement of the suit, and Tropicana does not deny the existence of the indebtedness. Rather it asserts that Elcano must produce the notes to be entitled to payment. Thus, Tropicana's defense is grounded on the existence of the notes.

Although it is alien to the usual American mortgage transaction not to have notes, it is the usual practice in Spain where this mortgage was executed not to have them. According to the evidence, the mortgage itself was sufficient security for the loan without the notes under the prevailing Spanish practice. In these circumstances it is understandable that Elcano would attach little significance to a failure of Tropicana to deliver the notes at the time the mortgage was executed. Elcano's witnesses who were present in Cadiz at the time the mortgage was executed, and those who were concerned with the mortgage arrangements testified that no notes were delivered. As a witness on its behalf Elcano presented a Greek lawyer who testified that the mortgage was duly and validly executed and recorded in accordance with the laws of Greece and the trial court so found.

Tropicana vigorously asserts that the notes were executed and delivered by it to Elcano. However, the witness who Tropicana contended could establish the fact of delivery, Mr. Aazgour, never did testify. Aazgour was present at the delivery of the ship, and handled the financial aspects of the transaction for Tropicana. Mr. Robiolio, Tropicana's sole witness at the trial, testified that the notes were in Aazgour's possession in Cadiz, and that he saw them transferred to the representatives of Elcano. Robiolio was in Cadiz to supervise the technical aspects of the transfer, and was not primarily interested in the financial transaction. His testimony was weak and unconvincing. It was contradicted by the testimony of Elcano's witnesses. Though he testified that the notes were transferred, he could not remember whether they were typewritten or printed. Tropicana was given every opportunity to introduce Aazgour's testimony.[4] At the end of the trial the record was kept open for several

4. Originally the parties agreed to take Aazgour's oral testimony by deposition in Berne, Switzerland on August 20, 1964. Aazgour failed to appear because of the alleged illness of his child. Tropicana assured Elcano that he would be in New Orleans for trial on August 28. At the trial he failed to appear because of an alleged illness. The District Court kept the record open until September 1 to enable Aazgour to arrive in New Orleans. On September 1 the court again kept the record open until September 10, but Aazgour did not appear, because, as counsel for Tropicana stated, settlement was being considered.

days at the request of Tropicana to permit Aazgour to arrive in New Orleans. At the end of that period, Tropicana submitted the case without his testimony. The District Court could properly have inferred from the failure to produce Aazgour as a witness in the circumstances here present that his testimony would have been injurious to Tropicana's cause. The trial court considered him a key witness. II Wigmore, Evidence § 285 (1940); See Interstate Circuit, Inc. v. United States, 306 U.S. 208, 225–226, 59 S.Ct. 467, 83 L.Ed. 610 (1939); O. F. Shearer & Sons v. Cincinnati Marine Service, Inc., 279 F.2d 68 (6 Cir. 1960); Anderson v. United States, 185 F.2d 343 (5 Cir. 1950); Austerberry v. United States, 169 F.2d 583 (6 Cir. 1948); Holly v. Smyth, 192 F.Supp. 891 (E.D.Va. 1961).

The scope of our review is limited. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); Ohio Barge Line v. Oil Transport Co., 280 F.2d 448 (5 Cir. 1960); Bisso v. Waterways Transp. Co., 235 F.2d 741 (5 Cir. 1956). We must accept the findings of the trial court unless it appears from the record that they are clearly erroneous. The testimony in this case was largely taken through interpreters, and from witnesses whose command of the English language was not as great as might be desired. The witnesses were frequently confused, and their testimony was sometimes confusing. The record is not easy to follow. The District Court found that no notes existed. That finding was dependent on the Court's assessment of the credibility of the various witnesses. In the usual case factual findings based upon credibility determinations by the trial court are rarely disturbed. The record in this case demonstrates the wisdom of the rule and the necessity for its application here. Ciccarello v. Graham, 296 F.2d 858 (5 Cir. 1961); Ellis Towing & Transp. Co. v. Socony Mobil Oil Co., 292 F.2d 91 (5 Cir. 1961); Smith v. United States, 287 F.2d 299 (5 Cir. 1961). The facts found by the District Court are amply supported by

substantial evidence and the legal conclusions reached are supported by the facts so found.

Finally, we conclude that Tropicana's insistence that it is entitled to an indemnity bond is without merit. The District Court found that there were no notes, and we have affirmed that finding. Since no notes existed, there is little reason to require Elcano to post an expensive, and meaningless bond.

Affirmed.