FARMERS GRAIN & MERCANTILE COMPANY, Appellee, v. R. M. BENSON et al., Appellants.

**EXECUTION: Form—General in Lieu of Special.** The issuance of a
1  *general* execution in lieu of a *special* execution to which plaintiff
   was entitled under the original judgment in landlord's attachment
   proceedings becomes quite immaterial when the special lien was
   fully restored by the return of the general execution, wholly un-
   satisfied.

**LANDLORD AND TENANT: Rent—Loss of Lien.** A landlord's lien
2  which is established within a year from the time the rent becomes
   due is not lost by the failure to issue special execution *within said
   year*.

**LANDLORD AND TENANT:** Lien—Assignment to Conversioner. One
3   who purchases of a tenant grain raised on the rented premises
may, upon being compelled to settle with the landlord, take an
assignment of the landlord's judgment against the tenant and en-
force the same as the landlord might have enforced it.

*Appeal from Shelby District Court.*—EARL PETERS, Judge.

APRIL 3, 1923.

ACTION in the nature of a creditor's bill to determine the
priority of rights and interests in certain personal property as
between plaintiff's assignor (landlord) and defendants (chattel
mortgage lien holders.) The opinion states the facts. Decree
entered in favor of plaintiff. Defendants appeal.—*Affirmed.*

*J. B. Whitney* and *V. H. Byers,* for appellants.

*Shelby Cullison,* for appellee.

DE GRAFF, J.—This is an action in equity to subject certain
personal property to the satisfaction of a judgment. Section
4087 Code 1897. The facts are simple and the legal principles
involved are not complicated.

Briefly stated these are the primary matters disclosed by
the pleadings and the evidence. On August 26, 1919 one Barton
leased in writing to the defendant Benson a 200-acre farm in
Shelby County, Iowa at an annual rental of $2,720 payable in
equal installments October 1st and February 1st of each year
after the commencement of a two-year term which began March
1st, 1919.

The lessee failed to pay all of his rent for the year ending
March 1, 1920, and on May 28, 1920 Barton commenced a law
action to recover judgment on the rent note aided by a landlord's
attachment. On September 18, 1920 a judgment was entered,
and it was further decreed "that plaintiff has a landlord's lien
on all of the property of defendant levied on by the sheriff of
Shelby County, Iowa," pursuant to the attachment save and
except any exempt property and except any of said property
subject to mortgage liens existing prior to the commencement
of the term, and "that said lien is established as in full force

and effect as of the date by levy by the sheriff'' on the attachment.

The court further ordered ''that the said property be sold, as by law provided, for the satisfaction of the judgment rendered herein, and that execution and other usual and necessary process issue for the sale thereof.''

On February 11, 1921 plaintiff caused a general execution to issue and a levy was made upon certain personal property of the defendant used and kept by him on the leased premises during the term, including that seized under the writ of attachment.

On February 14, 1921 the defendants in the instant action, other than Benson, served notice of claim of ownership to the property under levy by virtue of certain chattel mortgages thereon executed by the lessee Benson, and for this reason demanded a release of the property.

Plaintiff failed to furnish an indemnifying bond, and the sheriff released said property from the levy and returned the execution wholly unsatisfied. As the mortgagees could not be made parties to the law action to determine their respective interests and priorities in relation to the claim of the plaintiff, who is the assignee of the landlord of the judgment and lien, the action at bar was commenced February 15, 1921. On said date all of the parties entered into a written stipulation, and it was agreed that the property levied on under the general execution should be sold and the proceeds thereof deposited in a certain bank until it was judicially determined who was entitled thereto, and ''the proceeds of said sale to be treated in all respects as the property from which the same was derived.''

The record discloses that subsequently to the commencement of the term of the lease to wit, March 1, 1919, two chattel mortgages were executed and delivered by the defendant lessee Benson to the defendants Gaukel and the Farmers Savings Bank of Irwin respectively on property kept and used on the leased premises. These liens were junior and inferior to the landlord's lien.

On September 23, 1918, prior to the commencement of the term, a chattel mortgage was executed and delivered by defendant Benson on 19 head of three-year-old cows, 1 Hereford bull four years old, and 17 Hereford calves six months old. This

mortgage recites that "This money is loaned for the purchase price of above stock." This stock was subsequently taken to the leased premises.

We recognize that the giving of a purchase-money mortgage by a tenant as part of the transaction of purchase by him constitutes a lien in favor of the mortgagor superior to the lien of the landlord for rent. The landlord has a lien upon all the property of the lessee located or placed upon the premises during the term and upon none other. The lien attaches only to the property rights of the lessee. *Miller v. Swartzlender & Holman* 192 Iowa 153.

Whether the property levied on by virtue of the execution of February 11, 1921 included the property or some of it described in the purchase money mortgage is immaterial for the reason that the levy under that execution was released and the execution was returned by the sheriff unsatisfied. Furthermore, the property sold under the stipulation and applied to the landlord's judgment lien was not covered by the purchase money mortgage.

The trial court in its decree determined that a part of the proceeds of the sale of the property on February 16, 1921 which was made pursuant to the stipulation of the parties when the instant action was instituted, was not claimed by the plaintiff, and that part of the proceeds was exempt to the lessee Benson, and that a balance of $154.25 was due the landlord from Benson as rental for the year ending March 1, 1921.

The court further determined that Barton perfected his landlord's lien against the property that was sold pursuant to the stipulation, and that the said lien is still in force as against the proceeds of the sale pursuant to the stipulation of the parties. What property did the sale include?

It included 40 tons of hay that was grown upon the leased premises during the term and this item in the sum of $227 is not covered by any of the mortgages in question. The sale also included a team of grey geldings which had been taken upon the premises by the lessee prior to the execution of any mortgage covering the same. The value of this item under the sale is $200. The sale also included 39 hogs in value $595.55. These hogs were the increase of the hogs described in a chattel mort-

gage executed subsequently to the commencement of the term. These were hogs that were farrowed on the leased premises during the term of the lease. The sale also included 10 calves of the value of $292.50 and these were the increase of the cows described in the first chattel mortgage executed by the lessee prior to the commencement of the term. These were calves born on the leased premises during the term.

These items of sale having satisfied and discharged plaintiff's judgment with interest and costs the court held that "it is not necessary to determine, as between the plaintiff and said mortgagees, as to which has the prior lien on the remainder of the property sold," pursuant to the stipulation "and the proceeds of which is now in said Farmers Savings Bank of Irwin."

The trial court then determined that as between the mortgagees and the mortgagor Benson the mortgagees have a valid lien upon all of the proceeds of said sale that will remain after paying to the defendant Benson the value of the exempt property sold. With these findings we discover no legal cause for complaint, but we deem it necessary to briefly discuss other propositions advanced by appellant.

I. Did the issuance of a general in lieu of a special execution to which plaintiff was entitled under the original judgment constitute a waiver of the landlord's lien?

That judgment is a verity. Theoretically it was the end of that lawsuit. It settled the disputed issues of fact and applied to the facts the established principles of law. It fixed and declared the respective rights and obligations of the parties thereto as to matters submitted to the court for decision. Code Section 3769. The execution was simply the final process in the action, and its function was to give to the successful party the fruits of his judgment. It is the contention of appellants that plaintiff was entitled only to a special execution and that the issuance of the general execution thereon constituted a waiver and an abandonment of his special lien. The distinction between a special and a general execution is simply this—that the former points out and specifies the property to be sold and pursues and follows the judgment in respect to the disposition of the proceeds arising from the sale.

1. EXECUTION: form: general in lieu of special.

In the absence of statute a court has no right to restrict the plaintiff to a special execution. A judgment may be declared to be a lien upon the real property of the defendant, but a general execution may issue thereon without mentioning this fact and a sale has the same effect as if the execution had been specially directed against the real property owned by the defendant at the rendition of the judgment.

If the execution is general, when it should have been special, or special, when it should have been general, and the acts done thereunder are such only as were authorized by the judgment such acts must be treated as valid. The legal authority to command the sale of the whole of the property of the defendant necessarily includes authority to direct the sale of any specified part thereof.

Furthermore it is not necessary that a court direct the issuance of a special execution in order to continue the lien upon attached property, and the lien is not lost if special execution is not ordered. The writ is amendable, and it is the right of defendant to object to the character of the execution which question a court will decide in the light of the judgment, and the proceedings antecedent and anterior thereto. See Code Sections 3772, and 3924.

The foregoing propositions govern as between a plaintiff and a defendant. When the rights of third parties intervene a court may properly determine the character and extent of the execution as affecting their rights. In the instant case there is no showing why the general principle stated should be modified or limited in its operation. The record discloses that as between plaintiff and defendant a general execution issued although the character of the proceeding warranted the order of a special execution which was not specifically directed by the court in the judgment entered. The record further discloses that the levy made under the general execution was released upon the notice of the defendant mortgagees without sale thereunder, and the execution itself was returned wholly unsatisfied. The judgment creating a special lien was then fully restored, unless a waiver is created either by the act of the lien holder or by the intendment of the law. Clearly under the record plaintiff made no voluntary relinquishment of a known right,

and the law does not supply the intendment.  The status created
by the judgment was the same as if no execution had issued.
That judgment is a verity and its findings are not subject to
review on this appeal.

II.   Was the plaintiff's right of action to enforce a land-
lord's lien barred by the statute?

A landlord's lien is purely statutory.  The lien does not
date from the time of the levy of a writ of attachment for the
reason that the action may be commenced without aid of attach-

2. LANDLORD AND
TENANT: rent:
loss of lien.

ment and for the further and primary reason
that the statute in express terms provides that
the lien exists from the time the property is
taken by the tenant upon the leased property.  We must dis-
tinguish between a lien and the manner of enforcement.  Code
Sections 2992 and 2993.

It is provided that the lien for rent is upon all crops grown
and on all personal property used or kept thereon during the
term "for the period of one year after a year's rent, or the rent
of a shorter period, falls due; but such lien shall not in any case
continue more than six months after the expiration of the
term."

It is the claim of appellants that a plaintiff landlord must
bring his action, procure judgment, and levy special execution
within one year from the date the rent became due, otherwise
his lien is not perfected.  We cannot agree with this contention.
The statute provides that the lien is effected by bringing suit
within the time specified, and in the instant case the plaintiff
was adjudged within the time specified to have a lien.  That
lien was not lost by a failure to issue a special execution.

III.   Does the fact that the plaintiff purchased from the
tenant certain of the personal property to which the landlord's
lien attached and which was subject to a mortgage of one of

3. LANDLORD
AND TENANT:
lien: assign-
ment to con-
versioner.

the defendants make the plaintiff guilty of con-
version and thereby liable to the mortgagee for
the value of the property alleged to have been
converted?

Plaintiff herein at no time or in any pleading predicated
his rights on the theory of subrogation, and the doctrine is not
involved.   His claim is based on a formal assignment of the

judgment and the landlord's lien incident thereto. There is no attempt to impeach the assignment except an allegation in the answer that the defendant Benson assigned the judgment and lien to the plaintiff in consideration of paying to Benson the amount of said judgment which "agreement was in fraud of the rights of these defendants, and not in any way binding upon them." There is no claim that the assignment in itself gives rise to any priority. The assignment was proven and it did convey to the plaintiff all the rights that the assignor had in the thing assigned. It has not been impeached or shown to be unenforcible. It is not claimed nor can it be that the landlord's lien was inferior or junior to the mortgages upon the crops raised on the premises or the increase of the stock raised thereon.

The controversy in this particular concerns itself with the proof that plaintiff bought from the tenant some grain raised on the premises during the year for which the rent was claimed. It involves the mortgage lien of one of the defendants on 2,300 bushels of oats.

It appears that after the landlord secured the judgment against the tenant, and after the grain had been sold by the tenant, the landlord sued the plaintiff for the value of the oats purchased, and on which the landlord had a lien. This action was settled and dismissed. The settlement was effected by the plaintiff paying the landlord the amount of the rent due, and the taking of an assignment of the judgment against the tenant. Plaintiff then began this action to have the priority of the landlord's lien established.

The claim asserted by the landlord against the plaintiff was only a means of collecting the tenant's debt. The plaintiff was called upon to pay for the oats a second time by reason of a technical conversion. The value of the oats was less than the principal of the judgment against the tenant and in consideration of the payment of the principal the landlord assigned his judgment and lien. The assignee secured whatever rights the landlord had and stands squarely in his shoes. The court in its decree under the pleadings and proof simply established the liens in the order of their priority. This was the only issue involved.

There was no prayer for an accounting or marshaling of assets, or that plaintiff's claim be reduced by the value of the property alleged to have been converted. The evidence does not enable a court to determine to what extent the claim of the plaintiff should be reduced by reason of the alleged conversion. We reach the conclusion that the trial court correctly ruled the propositions presented in the case at bar and the judgment entered is therefore—*Affirmed.*

PRESTON, C. J., STEVENS and FAVILLE, JJ., concur.