A. N. FINKEN, Appellee, v. N. W. SCHRAM et al., Appellants.

No. 40633.

MAY 5, 1931.

Byers & Hines, for appellants.

White & White, for appellee.

KINDIG, J.—This proceeding to foreclose a real estate mortgage presents two distinct controversies, generally speaking. The first relates to the existence of the mortgage, and the second involves the pleadings for and against, and evidence to sustain, the appointment of a receiver.

A. N. Finken, the plaintiff and appellee, maintains that he has a valid mortgage executed by the defendants-appellants, N. W. Schram, and his wife, Josephine Schram, covering certain

land in Shelby County, and because the mortgagors are delinquent, the appellee urges that he is entitled to the foreclosure thereof, aided by the appointment of a receiver to collect the rents and profits during the year of redemption, extending from March 1, 1930, to March 1, 1931. While, on the other hand, the mortgagors and The Farmers Savings Bank, of Earling, defendants and appellants, all insist that appellee has no mortgage, and therefore is not entitled to a foreclosure. Furthermore the appellants argue that assuming appellee has a mortgage which may be foreclosed, nevertheless he in no event under the pleadings and evidence can have a receiver appointed because the pleadings and evidence do not authorize such relief.

Three mortgages executed by the appellants, N. W. Schram and Josephine Schram, are held by the appellant, The Farmers Savings Bank, of Earling. Two of these mortgages are prior liens on the same real estate covered by appellee's mortgage, and the other mortgage, held by the appellant, The Farmers Savings Bank, of Earling, incumbers certain chattels and crops belonging to the appellants, N. W. Schram and Josephine Schram. So, the appellant, The Farmers Savings Bank, of Earling, insists that its chattel mortgage covers the rents and profits for the period during which appellee desires a receiver. Hence, the appellants aver that the chattel mortgage is superior to any claim a receiver could have on those rents and profits.

After a hearing in the district court, that tribunal entered a judgment and decree declaring: First, that appellee had a good and valid mortgage executed by the appellants, N. W. Schram and Josephine Schram, and accordingly allowed the foreclosure thereof; and, second, that the appellee was entitled to the appointment of a receiver who had a right to the rents and profits from the incumbered land superior to that of the Farmers Savings Bank, of Earling, under the chattel mortgage held by it. Those are the questions involved on this appeal and they will now be considered in the order named.

I. Under that order, the first question for consideration relates to the existence of appellee's mortgage. Did appellee hold a mortgage legally executed by N. W. Schram and Josephine Schram, which was subject to foreclosure? Our answer is in the affirmative. The facts are now material for an understanding of the legal propositions involved.

N. W. Schram, on March 1, 1920, executed his promissory note for $4,000, payable to the appellee one year thereafter. Following that transaction, Schram, on July 3, 1922, executed a second note to appellee payable in the sum of $700 March 1, 1923. Both notes bore interest at the rate of eight per cent per annum before and after maturity. Neither note was paid, but some interest and a small portion of the principal were satisfied. On May 27, 1926, the amount due and unpaid on the two notes was approximately $6,048.20. To secure that unpaid balance, grant the Schrams additional time for the payment thereof, and reduce the interest from eight to seven per cent per annum, appellee consented to, and did, receive from N. W. Schram and Josephine Schram the real estate mortgage now under consideration. This mortgage was duly signed, acknowledged, and recorded. Contained in that mortgage is the following condition and provision concerning the debt secured:

"Provided always and these presents are upon this express condition, that if the said N. W. Schram and Josephine Schram (appellants), his wife, heirs, executors, administrators or assigns, shall pay the said A. N. Finken (appellee), his heirs, executors, administrators, or assigns the sum of Sixty Hundred Forty-eight and 20-100 Dollars on the first day of June, 1929, with interest thereon payable semi-annually at the rate of 7 per cent per annum, *according to the tenor and effect of the one promissory note of N. W. Schram and Josephine Schram payable to A. N. Finken or order, and bearing date May 27, 1926,* then these presents to be void, otherwise to remain in full force. (The italics are ours)."

A note purporting to be the one mentioned in the mortgage was introduced in evidence, but no signatures appear thereon. It seems that this note was prepared for execution at the time the mortgage was drawn up. W. B. Ryan, cashier of the appellant, The Farmers Savings Bank, of Earling, at appellee's request prepared the note and mortgage for the signatures of N. W. and Josephine Schram. When preparing those documents, Ryan found that the total due under the $4000 and $700 notes, above described equaled the sum named in the mortgage and unsigned note. After preparing the mortgage and unsigned note, Ryan gave them both to Mr. Schram "to take out for himself and wife

to sign.'' About one month thereafter, Ryan went out to the Schram home, which was on a farm. Mrs. Schram was ill. Later the Schrams came to The Farmers Savings Bank, of Earling, where they signed and acknowledged the mortgage, but for some reason they did not sign the note. By way of explanation, Mr. Ryan, the cashier, declares that Mr. Schram reported to him the note had been lost. Accordingly, the cashier then prepared a duplicate note, but it appears that the Schrams did not sign it. Some delay was caused because of Mrs. Schram's illness, and then the matter seems to have been overlooked. Appellee had a box in The Farmers Savings Bank, of Earling, where he kept the mortgage and unsigned note, together with the $4000 and $700 notes, previously described.

Following the execution and recording of the mortgage, the Schrams paid interest on the debt secured and asked for an extension of the obligation. During a conversation with appellee, Schram asked that the mortgage be extended and not foreclosed. At no time did the Schrams deny the indebtedness as set forth in, and secured by, the mortgage. Because of the foregoing facts, appellants now say that the mortgage never became operative for the reason that the note therein named had never been signed. Appellants declare that without the intended signatures on the note, there could be no completed transaction. As the transaction contemplated a note and mortgage, it is said that the mortgage could not become effective without the note.

In answer to appellants' argument in that regard, appellee maintains that the debt existed and that the mortgage was given to secure the same regardless of the note. Such are the contentions of the respective parties. That the debt named in the mortgage existed, is not disputed. Likewise, it is conceded that the $4000 and $700 notes, above named, are largely unpaid, unless they are absorbed in the mortgage indebtedness. There is no doubt that the Schrams asked for an extension of the obligation, and that appellee consented thereto, providing the mortgage was given. To accomplish that result, the cashier was asked to prepare the mortgage and new note, and obtain the Schrams' signatures thereon. He apparently handled the transaction and kept all the papers in appellee's box at the bank. Regardless of the new note, appellants recognized the mortgage and the indebtedness secured thereby for they paid interest thereon and asked

that there be no foreclosure, as above stated. Additional time under the mortgage was requested by appellants and refused by appellee, as aforesaid. Not only is the foregoing true, but all the defendants in their answer admitted "the execution and delivery of the note and mortgage."

Manifestly, therefore, the mortgage was given to secure the debt rather than the mere note. A careful reading of the entire instrument settles this fact beyond dispute. If, as we have found, the mortgage was given not merely to secure the note, as such, but rather to protect the debt, as distinguished from the evidence thereof, then, under the facts and circumstances, the mortgage may be a valid contract. Morris v. Linton, 104 N. W. 927 (Nebr.) ; Lierman v. O'Hara, 140 N. W. 1057 (Wis.) ; Lee v. Fletcher, 48 N. W. 456 (Minn.). See also Fetes v. O'Laughlin, 62 Iowa 532. The Minnesota court, in Lee v. Fletcher (48 N. W. 456), supra, reading on page 457, suggested:

"A note for the amount he (the party sued) owed, or even for a greater sum, would not have added to his indebtedness as such. It would have been evidence of it only. And if it satisfactorily appeared that, when giving the mortgage, it was the purpose of the maker to secure his debt, the non-execution of a note, or the execution of a note for a larger or smaller sum, would not, in the absence of fraud, invalidate the security. The validity of a mortgage does not depend upon the description of the debt, nor upon the form of the indebtedness; it depends rather upon the existence of the debt it was given to secure. It may be valid without any note or bond, although it purports to secure a note or bond, and substantially describes it."

Again, a similar excerpt may be found in Lierman v. O'-Hara, (140 N. W. 1057), supra, reading on page 1058:

"From the undisputed facts in the case it is obvious that, although the writing is not an executed promissory note corresponding with the provision of the mortgage, the mortgagor intended to secure his indebtedness to the mortgagee, as stated in the mortgage and the unsigned writing which refers to the existing indebtedness intended to be secured. The written memorandum can properly be treated as evidence of the debt which the mortgage was given to secure. Under the facts and circum-

stances, the omission of Neitzke to sign this paper did not mislead any person. The conditions in the mortgage and the contents of this writing expressing the terms of payment of this debt correspond with sufficient accuracy to show the indebtedness which the parties sought to cover and secure by the mortgage. The discrepancy may be disregarded as not necessarily fatal to the validity of the mortgage.''

Clearly, therefore, under the facts and circumstances revealed, the mortgage was duly delivered and it legally secured the debt therein named. Consequently appellee was entitled to judgment against the Schrams for the amount secured by the mortgage, as well as the foreclosure of the security contract. While there is something said in the pleadings to the effect that appellee agreed not to foreclose at this particular time, in consideration for the delivery to him of certain chattels named in the mortgage given by the Schrams to the Farmers Savings Bank, of Earling, yet the evidence does not sustain the allegation.

Therefore, the judgment and decree of the district court, in allowing the foreclosure, was properly entered. We make no decision or indication here concerning the effect of this particular mortgage under the recording laws, for the reason that this point is not raised or argued.

■ II. Having recognized the validity of the mortgage and the appellee's right to the foreclosure thereof, the next question presented for consideration relates to the receivership.

Appellants declare that appellee, under the pleadings, is not entitled to a receiver to collect the rents and profits during the year of redemption. Under the terms and conditions of the mortgage, a receiver was authorized for the purposes aforesaid.

Nevertheless, the appellants earnestly argue that the judgment and decree of the district court in so far as it appointed a receiver should be reversed because the defense named in the answer as a resistance thereto was duly proven. This argument on appellants' part is divided into three propositions. These now will be considered in their order.

First: By way of answer, appellants declared that Schram owned the real estate in question long prior to the time that the debt due appellee arose, and occupied the farm as a homestead during all the times material. Furthermore, it is said in the

answer that Schram used the proceeds from the land, and the homestead, for the payment of taxes and interest on the incumbrances. This land was heavily mortgaged. There appears to be a first mortgage to Annis & Rohling, a second and third to the appellant, The Farmers Savings Bank, of Earling, and a fourth to the appellee.

Continuing their pleading, appellants declare that Schram intended to stay in possession of the land and pay the rents and profits therefrom on the taxes and the interest accruing under the mortgages. It is insisted by appellants that they proved the allegations above named and therefore are entitled to defeat appellee's prayer for a receiver. Whether sufficient or insufficient, appellants say their answer was in no way attacked by motion or demurrer, and therefore appellee consented that the alleged issue be presented to the court. Sufficient proof was offered thereunder and consequently appellants say judgment should be entered accordingly. Obviously, however, appellants are mistaken about the net result of the foregoing pleading. When carefully considered with all the language used by appellants in the entire paragraph concerned, this portion of the answer contains: First, the selection of a homestead; and, second, the fundamental statement that Schrams have not waived their right to possession of the real estate. Under the foreclosure proceedings, of course, they had a right to make statutory selection of a homestead subject to the stipulations in the mortgage so far as possession thereof is concerned. That portion of the answer averring that possession was not waived naturally raised fact and law questions, and the facts and law were against appellants' contention. Without question the mortgage contains a sufficient receivership clause, which amounts to a waiver of possession during the redemption period. A deficiency judgment resulted after applying all the land, including the homestead, on the mortgage indebtedness. The receiver was not appointed until after this deficiency appeared. Hence, the action of the district court in appointing the receiver at that late date recognized Schrams' homestead rights in harmony with our holding in Sheakley v. Mechler, 199 Iowa 1390, reading on pages 1395 and 1396:

"In brief, we hold that a receiver under a mortgage may not take possession of the homestead until sale on execution is

had, as it cannot be determined until that time, with that degree of certainty contemplated by the law, that a deficiency exists. The homestead is a solicitude of the law, and this court recognizes the importance of the preservation of the home. The power to mortgage a homestead is qualified by statute, and a judicial sale of the homestead under stipulations in a mortgage is to be enforced for the benefit of the mortgagee as a last resort only.''

 Second: It is also said that the appellee is not entitled to a receiver under the circumstances because Schram had given a chattel mortgage to the appellant, The Farmers Savings Bank, of Earling, covering the crops for the year 1930. Again, appellants say that the defense thereby pleaded was fully proven and the district court should have recognized the fact by refusing the receivership. A careful study of this portion of the answer, however, reveals that the appellants pleaded only fact questions concerning the priority of the chattel mortgage. During the trial, it was proven that the receivership clause in appellee's mortgage was in fact prior to the chattel mortgage. Such chattel mortgage, under the facts, then, does not defeat the receivership. No crops had been planted at the time the receiver was appointed March 8, 1930, nor were the crops described in the chattel mortgage raised during that year, for Schram, as landowner, did not cultivate the land. Immediately after his appointment, the receiver took possession of the land and the crops were produced by a tenant under him. Thus appellee, the mortgagee, had a superior right to the crops under the receivership, and The Farmers Savings Bank, of Earling, held no valid claim to such crops through the chattel mortgage. This chattel mortgage was executed October 23, 1929, while appellee's real estate mortgage previously came into existence May 27, 1926. So, the real estate mortgage containing the receivership clause was in existence long before the chattel mortgage. Necessarily, then, under the previous holdings of this court, the chattel mortgage did not defeat appellee's right to the crops for the period in question under the real estate mortgage. Louis v. Hansen, 205 Iowa 1216.

 Third: An additional argument is made by appellants on the theory that appellee is not entitled to the receivership because his mortgage is inferior to the two aforesaid mortgages

held by The Farmers Savings Bank, of Earling. Once more appellants declare that they pleaded a defense which was proven, and therefore judgment should have been for them. Plainly, however, appellants misconstrue the effect of the issues raised by declaring that the two real estate mortgages held by the bank were superior to appellee's right under his mortgage. The appellants raised an issue which was to be determined by the court under the evidence. Appellee admits the superiority of said bank's two mortgages on the real estate, but denies the priority thereof so far as the crops in question are concerned. It is not claimed by appellants that a receivership proceeding was instituted under the bank's mortgage prior to the present proceeding prosecuted by appellee. Many times it has been said that the receivership clause does not become operative until an action is begun for the appointment of a receiver. Even though the bank's mortgages are prior in date, yet appellee, having instituted receivership proceedings first, has a prior right to the rents and profits. Lynch v. Donahoe, 205 Iowa 537. The appellant, Schram, and his wife are insolvent. There is an unsatisfied deficiency judgment remaining after the mortgaged land was sold.

Under the entire record, therefore, appellee was entitled to the appointment of a receiver to collect the rents and profits from the real estate for the year, 1930.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed.—Affirmed.

FAVILLE, C. J., and EVANS, MORLING and GRIMM, JJ., concur.