F. F. WUNDER, Plaintiff, Appellant, v. N. W. SCHRAM et al., Defendants, Appellees; FARMERS TRUST AND SAVINGS BANK of Earling, Intervenor, Appellee.

No. 41737.

DECEMBER 12, 1933.

REHEARING DENIED APRIL 5, 1934.

White & White, for appellant.

V. H. Byers, for appellees N. W. and Josephine Schram, and for intervenor-appellee, Farmers Trust & Savings Bank.

KINDIG, J.—Before the commencement of the present suit, A. N. Finken, in a previous action, foreclosed a mortgage executed by N. W. Schram and Josephine Schram, the defendants-appellees in the case now under consideration. In that foreclosure proceeding, a receiver was appointed to collect the rents and profits on the mortgaged premises for the year commencing March 1, 1930, and ending March 1, 1931. See Finken v. Schram, 212 Iowa 406, 236 N. W. 408. It is important here to note that the intervenor, the Farmers Trust & Savings Bank, of Earling, Iowa, was a party to the foreclosure proceeding and contested the appointment of the receiver. Nevertheless, the plaintiff-appellant in the case at bar, F. F. Wunder, was appointed such receiver.

After his appointment, the receiver, under date of April 5, 1930, rented the mortgaged premises under authority of the case of Finken v. Schram et al. (212 Iowa 406, 236 N. W. 408), supra, to the appellees, N. W. Schram and Josephine Schram, husband and wife, for a rental of $1,700, due February 1, 1931. This rental payment was evidenced by a promissory note executed by the lessees and

payable to the receiver. The term of the lease was from March 1, 1930, to March 1, 1931. Although the lease was not dated until April 5, 1930, it was expressly agreed by the parties that the term should extend nevertheless from March 1, 1930, to March 1, 1931. When the rent became due, the lessees failed to pay the same, and consequently the receiver, on February 26, 1931, commenced an action in landlord's attachment to collect the rent. Under the landlord's attachment, the following property was levied upon: 500 bushels of corn, 400 bushels of oats, 5 suckling calves, 28 brood sows, Hampshires, 15 yearling steers and heifers.

Then, on April 2, 1931, judgment was entered against the lessees in the landlord's attachment proceeding. Such judgment was general, as distinguished from special.

On April 24, 1931, thereafter, an execution issued on the said judgment. In form, this execution was special. A levy under the execution was made upon the property attached under the landlord's attachment. Whereupon the intervenor appeared and claimed the property under a chattel mortgage which was inferior to the receiver's landlord's lien for the rents, unless by taking a judgment general in nature and not providing for a special execution, the receiver waived his lien. The chattel mortgage covers the hogs and calves attached, the intervenor claims, because such animals are the increase from other hogs and cattle named in the chattel mortgage.

After the cause was submitted to the district court, that tribunal found that the receiver had waived the lien and entered judgment in favor of the intervenor. Accordingly the receiver appeals.

I. It is said, in support of the district court's judgment, that the receiver took only a general judgment which did not provide for a special execution. Moreover, it is said by the intervenor that the receiver did not ask for a special execution in his petition. Consequently the intervenor contends that the receiver waived the landlord's lien. Because the landlord's lien was thus waived, the intervenor argues that the property levied upon was subject to its mortgage then existing. If the receiver, by anything done or omitted by him, waived his landlord's lien, then, of course, the intervenor would be entitled to the property under its mortgage.

A careful consideration of the record, however, will reveal the fact that the receiver did not waive his landlord's lien. When bring-

ing suit for the rent, the receiver stated in his petition the date of the lease and attached a copy thereof to the petition. Likewise, the receiver stated in his petition the period for which the rent was due. According to the petition, the rent was due for a period less than a year previous to the time suit was commenced. Following those allegations in the petition, the receiver then asked for judgment. Co-ordinate with the receiver's demand for judgment was a like demand that a writ of attachment issue "to enforce the landlord's lien of this receiver against the property of the (lessees)." Plainly, therefore, the receiver was attempting to enforce his landlord's lien.

It is true, as before stated, that the judgment was general. No provision was made therein for a special execution. The execution actually issued on the judgment, however, was in the nature of a special one. Section 10261 of the 1931 Code provides for a landlord's lien; and section 10264 of the same Code contains the following supplemental enactment:

"The lien may be enforced by the commencement of an action, within the period above prescribed, for the rent alone, in which action the landlord shall be entitled to a writ of attachment, upon filing with the clerk or justice a verified petition, stating that the action is commenced to recover rent accrued within one year previous thereto upon premises described in the petition; *and the procedure thereunder shall be the same, as nearly as may be, as in other cases of attachment,* except no bond shall be required." (Italics supplied.)

Those are the material provisions of the statute specifically relating to landlord's attachments, but in order to obtain the full effect of the law relating thereto, it is necessary, because of the italicized portion of section 10264, to consider section 12132 of the 1931 Code. That section reads:

"If judgment is rendered for the plaintiff in any case in which an attachment has been issued, the court shall apply, in satisfaction thereof, any money seized by or paid to the sheriff under such attachment and by him delivered to the clerk, and any money arising from the sales of perishable property, and if the same is not sufficient to satisfy *the plaintiff's claim, the court shall order the issuance of a special execution for the sale of any other attached property which may be under his control.*" (Italics supplied.)

There is no doubt that, under the provisions of these statutes, the pleader, when using good form, should ask for the issuance of a special execution, and the court, in compliance with the statute, should provide in the judgment therefor. While such demand on the part of the pleader and such provision in the judgment is the best form for both, yet that does not necessarily mean that the omission of a provision for special execution under the judgment will work a destruction of the landlord's lien for rent.

In the case at bar, the plaintiff's petition, while awkwardly worded, indicates the intention of the pleader to ask for the foreclosure or enforcement of his landlord's lien. The district court, when entering judgment, should have provided for the special execution. Section 11570 of the 1931 Code contains the following provision:

"Where any other than a general execution of the common form is required, the party must state in his pleading the facts entitling him thereto, and the judgment may be entered in accordance with the finding of the court or jury thereon."

Although generally relief will not be granted beyond the prayer therefor (see Schuster Bros. v. Davis Bros., Inc., 185 Iowa 143, 170 N. W. 292; Richardson v. Short, 201 Iowa 561, 207 N. W. 610; Lyster v. Brown, 210 Iowa 317, 228 N. W. 3; DeReus v. DeReus, 212 Iowa 762, 237 N. W. 323), yet in the case of a landlord's attachment there may be a special execution, although the prayer of the petition does not specifically make that request.

According to section 11570, the judgment shall be entered in accordance with the findings of fact by the court or jury when the pleading contains the necessary facts for a special execution. Under that section, the facts in the pleading, rather than the prayer, control. When considering a general attachment, we said in Corriell v. Doolittle, 2 G. Greene 385, reading on pages 386 and 387:

"Three points are urged in this court, to show that the decision below was erroneous. 1. That the judgment was general upon which the sale was made, and a special execution issued thereon. By the record it appears, that the suit upon which the judgment was rendered, had been commenced by attachment, and that although the court rendered a general judgment, the execution was issued pursuant to the writ of attachment. To have been strictly regular and formal, the judgment should have ordered a special execution upon the

property attached. But that omission in the form of the judgment, could not vacate the attachment lien. It ran conjointly into the judgment and execution from the date of the attachment levy, and we think the special execution was fully authorized by that levy and the resulting lien, even without the special order in the judgment. * * *

"Upon its [the execution's] face, it conferred complete authority for the sale. It recites the original attachment and levy; describes with precision the judgment upon which it issued, and directs a sale of the property attached. So far then, from being a void execution, we cannot regard it as even voidable, for it clearly shows and follows the judgment upon which it was founded. The order to sell special property, is not only authorized by the nature of the proceedings, but also by the general and unlimited order that an execution should issue. This authority for a general execution necessarily includes a warrant for one of a more limited or special character; as the minor warrant is obviously comprised under the greater."

Again we said in Kingsbury v. Buchanan, 11 Iowa 387, reading on pages 391 and 392:

"It is further submitted that the judgments subsequently rendered in favor of the attaching creditors do not show any order for special executions against the property attached, and that the copies thereof offered by defendant, for this reason, should have been excluded from the jury. * * * But the court in its judgment need not direct that a special execution issue in order to continue the lien upon the property attached. The execution issues as a matter of right to the party recovering the judgment, and the lien is not lost if special execution is not ordered."

Apparently subsequent amendments to the statutes have not modified the rule stated in the two early Iowa cases cited so far as landlord attachments are concerned. Staber v. Collins, 124 Iowa 543, 100 N. W. 527; Farmers Grain & Mercantile Co. v. Benson, 195 Iowa 695, 193 N. W. 14. The case of Farmers Grain & Mercantile Co. v. Benson, supra, relates to a landlord's attachment. There we again said, reading on page 700:

"If the execution is general when it should have been special, or special when it should have been general, and the acts done there-

under are such only as were authorized by the judgment, such acts must be treated as valid. The legal authority to command the sale of the whole of the property of the defendant necessarily includes authority to direct the sale of any specified part thereof. Furthermore, it is not necessary that a court direct the issuance of a special execution *in order to continue the lien upon attached property, and the lien is not lost if special execution is not ordered.*" (Italics supplied.)

As suggested in Pickler v. Lanphere, 209 Iowa 910, local citation 914, 227 N. W. 526, the landlord's lien is not created or acquired by the attachment. Such lien is given by statute regardless of the landlord's attachment. Accordingly the landlord's attachment is merely an aid for the statutory process provided for enforcing the statutory lien. By means of the attachment the property is sequestered and held by the proper officer in order that a future judgment may be satisfied therefrom. A landlord's lien, therefore, is not waived although in the suit aided by landlord's attachment the judgment is general rather than special.

So, in the case at bar, the landlord's lien at the time it was contested by the intervenor was still in force. Because, then, the intervenor's mortgage originally was inferior to the landlord's lien, it still remains inferior. This, in effect, is conceded by the parties to this litigation. In other words, there was no waiver of the landlord's lien because the execution was general rather than special.

II. That being true, the district court erred in not allowing the grains raised upon the farm to be sold under the receiver's execution. Both corn and oats were thus raised. These grains were levied upon and should be sold to satisfy the receiver's judgment.

A more serious contest, however, is waged over some of the hogs and calves levied upon. These hogs and calves, it is to be remembered, are the increase from other hogs and cattle named in the chattel mortgage. It is conceded by the intervenor that the receiver is entitled to five of the calves. The controversy, then, is waged over the remainder of the calves and the hogs. Those calves and hogs, the receiver contends, are subject to the landlord's lien, and therefore subject to sale under the execution because they were born upon the land during the term of the lease.

Upon this subject, we said in Dilenbeck v. Security Savings

Bank, 186 Iowa 308, reading on pages 311 and 312, 169 N. W. 675, 172 N. W. 486:

"The landlord may not be deprived of the benefits of this statute [the one creating the landlord's lien] by the contract of the tenant with a third person. Under the law, a mortgage on crops to be grown does not attach until the crop is planted, nor does it attach to the increase [of animals] until it comes into existence; and it is manifest that the tenant cannot, by a contract with a third person, deprive the landlord of the lien expressly created by statute on crops to be grown or the increase [of animals] to come into existence subsequent to the tenant's taking possession of the leased premises. If there were no other reason for so holding, sufficient reason could be found in the fact that the increase [of animals] is nourished from the produce of the land, and the crops spring from its soil; and therefore the lessor ought not to be deprived of the opportunity to enforce rent as compensation for the use of the land against the products incidental to such use. The security he is given by this statute cannot well be taken from the landlord without his consent, and, though it may be that the mortgage and lien attached at about the same time, we are of opinion that the court rightly held the lien of the plaintiff superior to that of the mortgage held by the defendant bank."

III. But it is argued by the intervenor that the hogs and the calves, except the five above-mentioned, were not born upon the farm during the term of the lease. Therefore, it is said by the intervenor that, because such hogs and calves are the increase from cattle and hogs named in the mortgage, the mortgage lien covers the increase as well as the original stock because the increase was born before the landlord's lien commenced.

Some confusion exists at this point in reference to the exact facts. The questions to the witnesses were propounded upon the theory that, if the calves were born before the date of the lease, they were not subject to the lien of the landlord, although they were in fact born upon the land after March 1, 1930. Apparently Schram had possession of the land during the mortgage foreclosure and up to the time the lease was executed. It will be recalled that the term of the lease as written was from March 1, 1930, to March 1, 1931. As before explained. the lease was dated April 5, 1930. When executing the lease, however, the parties thereto expressly provided

that, although the instrument was dated April 5, 1930, the term thereby contracted should be from March 1, 1930, to March 1, 1931. So far as the lessor and the lessee are concerned, then, the term of the lease was from March 1, 1930, to March 1, 1931.

Consequently, if the cattle and hogs in question were born upon the premises during the term of the lease, they are, because of the terms of the lease, subject to the landlord's lien for that period. Evidence was introduced indicating that many of the hogs were born on the premises after March 1st. The lessees, therefore, cannot say that these hogs are not subject to the landlord's lien under the circumstances.

IV. There is next to be determined whether the intervenor is bound by the terms of the lease. It was not a party thereto. Nevertheless, the intervenor was a party to the receivership proceedings. While a party to those proceedings, the intervenor asserted its chattel mortgage as superior to the right of Finken, the mortgagee. See Finken v. Schram (212 Iowa 406, 236 N. W. 408), supra. Nevertheless the cause was decided adversely to the intervenor and in favor of the mortgagee Finken. Because the cause was decided in favor of Finken, the receiver was appointed, as before explained. Under that record, it is apparent that the intervenor is bound by the decree in the receivership proceeding so far as the issues there were involved.

There was no issue in the receivership proceeding, however, concerning whether the term of the tenancy should begin on the 1st of March or at the time of the execution of the lease. The landlord's lien, then, so far as the intervenor is concerned, would commence at the time of the execution of the lease. This is true although, by the provisions of the lease, the term of the demise, so far as the lessees are concerned, theoretically commenced on the 1st of March, 1930. Even if in the receivership proceedings it was determined that Finken, the mortgagee, was entitled to collect, through the receiver, the rents and profits for the year 1930, it was not there determined that the tenancy, whereby the rents and profits were to accrue, should begin on March 1, 1930. Nor was it determined in the receivership proceeding when the landlord's lien should commence, and therefore become superior to the intervenor's mortgage on the increase of the stock covered therein. Manifestly, the lessees may not contract with the receiver that to the prejudice of the intervenor's mortgage, the term of the lease shall not commence on its

actual date, but rather on a previous theoretical date. If the lessees should so contract, they could thereby, without authority of law, confiscate the intervenor's mortgage to the extent contemplated. O'Donell v. Davis, 201 Iowa 214, 205 N. W. 347. This, the lessees, of course, cannot do.

Therefore, if any of the hogs or calves were born on the land before the tenancy actually began, as distinguished from the theoretical starting point named in the lease, the intervenor would have a superior lien thereon. It is self-evident that the lessees could not by contract bargain away the intervenor's mortgage lien on the hogs and calves. As soon as the term of tenancy began, the landlord's lien was superior so far as the hogs and calves born thereafter are concerned. But if the calves and hogs were born before the term of the tenancy began, the mortgage lien attached to them without any interference from the landlord's lien which might arise thereafter under a tenancy to be subsequently created by contract.

For the reason that the district court held that the landlord's lien was waived, the judgment of the district court is reversed.—Reversed.

ALBERT, C. J., and EVANS, CLAUSSEN, and DONEGAN, JJ., concur.