PRUDENTIAL INSURANCE COMPANY of America, Appellant, v. RALPH D. WESTFALL et al., Appellees.

No. 42693.

1120

April 2, 1935.

Edwin J. Stason, Kenneth T. Wilson, Quintard Joyner and Clinton B. Nasby, for appellant.

Bliven & McKinley, for appellees.

HAMILTON, J.—The legal question involved in this case arises out of a sheriff's sale under special execution of an eighty-acre farm, forty acres of which constituted the homestead of the defendant. Prior to the date of the sale, the defendant caused notice to be served upon the sheriff demanding that he sell the nonhomestead forty first, and if this failed to bring sufficient to satisfy the judgment debt, that then the homestead be sold to make up the deficiency. The sheriff's return states:

"I first offered the NW¼ of the SE¼ of Section 36, Twp. 88, N., Range 48, and A. L. Sencenbaugh then and there bid the sum of $2,000.00 for said forty acre tract; I then offered the NE¼ of the SW¼ of Section 36, Twp. 88, N., Range 48, being the homestead of the defendants, and the said A. L. Sencenbaugh then and there bid the sum of $3,000.00 for said forty acre tract; I then offered said real estate as a whole and The Prudential Insurance Company of America, a corporation, then and there bid the sum of Eight Thousand Two Hundred Twenty-two and 85/100 Dollars for said real estate in a body; and the bid of The Prudential Insurance Company of America, a corporation, * * * for said real estate in a body being more than the aggregate of said separate bids, I then and there struck off and sold said real estate in a body and sold same to The Prudential Insurance Company of America, a corpora-

tion for the sum of Eighty-two Hundred Twenty-two and 85/100 Dollars, it being the highest and best bidder therefor, etc."

The defendant filed a motion to set aside the sheriff's sale on the sole ground that forty acres of the mortgaged premises constituted his homestead and should have been sold separately after exhausting the nonhomestead property. The lower court sustained defendant's motion and plaintiff appeals.

The judgment was for $8,256.17 debt, and $144.20 costs. The decree of foreclosure ordered the real estate or so much thereof as might be necessary sold to satisfy said judgment, interest, and costs. A special execution commanded the sheriff, by levy and sale, to make the sum of the judgment, interest, and costs. It was therefore the official duty of the sheriff to sell, according to the statutes in such cases made and provided, the mortgaged property or so much thereof as became necessary to make the amount of the mortgage debt, interest and costs.

The sole question is, did the sheriff comply with the law in such cases made and provided, or is this sale void or voidable? In other words, was the officer bound to accept the $2,000 bid and strike off the property to the bidder before proceeding to sell or offer to sell the homestead forty?

Section 10150 of the Code of 1931 provides:

"The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary."

Section 10155 of the Code of 1931 contains the exceptions and among other things provides:

"The homestead may be sold to satisfy debts * * * created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt."

The legality, and/or regularity, of the sale in question depends upon the construction to be placed upon the statutory phrase, "after exhausting all other property."

In an early case, Burmeister v. Dewey, 27 Iowa 468, 469, a case involving a homestead, in a very able and well-considered opinion by Justice Wright, we find this language:

"That the homestead was liable for the debt is not controverted. The only question is as to its *order* of sale, if necessary to satisfy the writ. By the law governing the subject it is declared, after providing that *it may be sold* in certain cases, of which this before us is one, that it shall not *in these instances* be sold except to supply the deficiency remaining *after exhausting* the other property of the debtor which is liable to execution. Rev. section 2281. The mortgage made the debt a special lien—the judgment ordered its sale, the execution so directed, and as to its liability there remains, I repeat, no doubt. Assuming now that it was a question of power and not of mere *regularity*, was the other property named in the writ * * * exhausted, within the meaning of the law, before the homestead was sold. In my judgment, as applied to this case, it was."

In that case a two hundred forty-acre farm was involved, and the sheriff offered it in the smallest legal subdivisions and received no bids and then offered the entire tract and sold the same *en masse.* Quoting again from the cited case at page 475 of 27 Iowa, the court said:

"If the other property had been sold for a farthing, it would have been exhausted, and then the homestead could have been sold. Being no sale of the other property, the officer cannot make return as to the homestead, for he has nothing to return unless he makes an offer—or, making the offer, sells it. He acts in good faith—such is the presumption. We cannot indulge in any other. He advertises and duly endeavors to sell or exhaust the other property. The forty is liable upon a contingency. 'I have demonstrated,' he says, 'in the manner required by law, that the other property will not sell, will not pay the debt and now I will offer it in gross.' He sells it in gross and for a price (acting in good faith all the time, as we are bound to presume)—which further demonstrates that the other property would not pay the debt (there was still a balance due the mortgagee after the sale for $5,050)—and he does thus exhaust the other property. For he first demonstrates that it will not separately sell to pay the debt—and that with all together, the homestead and all, by exhausting all, the debt is still unsatisfied. * * * After the officer had offered the other tracts, he had the power to offer and sell all, as he did. And while if he had offered and sold all the balance first and then the homestead, it would not have been irregular, he was not bound to do so. And having the power, in his

discretion, to sell in one way or the other, no court of equity ought, after the lapse of nine years, of continuous and uninterrupted possession, to set aside the sale."

Again, in Connecticut Mutual Life Insurance Company v. Brown, 81 Iowa, page 42, 46 N. W. 749, 750, where the matter arose on a motion to set aside an execution sale, as in this case, the motions were overruled. It is not revealed in this case that any part of the land was the homestead of the defendant. The land was offered in separate tracts, and, there being no bids, was sold *en masse*, and in construing the section of the Code which provides for sale in separate tracts, where notice to that effect is served upon the sheriff by the defendant, the court said:

"The section is intended to secure sales in separate tracts, as defendants in execution shall direct. It is not intended to defeat sales. A reasonable construction must be put on it, to the effect that, if the lands cannot be sold in separate tracts, for want of bidders, they may be afterwards offered, and sold *en masse*, and such a sale is not *per se* void or voidable. If the entire tract, or the different tracts, for any reason, are more valuable when taken together, and will in that way sell for a larger sum, they may be so sold, and the sale will be subject to no objection by the landowner. The fact that no bids were made when the land was offered in separate tracts, and it was therefore sold *en masse*, raises a presumption that the land is more valuable when taken together, or, at least, that defendant in execution suffered no prejudice by the sale."

In the case of Glenn v. Miller, 186 Iowa 1187, 173 N. W. 135, 136, the question arose on a suit in equity to set aside an execution sale of land, on the ground that the sheriff abused his discretion in selling too much of the land at a wholly and grossly inadequate price, and the court granted relief, even after the sheriff's deed had been executed and delivered, the court holding that the sheriff abused his discretion in proceeding to sell the property without adjournment or effort to avoid the unnecessary sacrificing of plaintiff's property. Speaking of the sheriff's duties in this regard, Justice Weaver, speaking for the court, said:

"The sheriff is not the mere agent or servant of the judgment creditor. He is the officer of the law, and his duty to execute the

writ and collect the judgment is no more apparent or obligatory than is his duty to protect the debtor against an unjust or oppressive levy and sale. It is to that end that the statute gives him discretion to postpone the sale in the absence of bidders, or when confronted by bidders who offer only bids grossly out of proportion to the value of the property; and abuse of that discretion will invalidate his sale."

Again in State Bank v. Brown, 128 Iowa 665, 105 N. W. 49, 51, Judge Deemer, speaking for the court, used this language:

"The sheriff was an agent for the defendant Cooper, as well as for the other parties, and he in virtue of statutory authority treated the bid and sale as a nullity, and so reported to the court. As he could not have enforced the bid, neither may the defendant Cooper."

In this case the landowner sought to enforce a specific performance of a bid which the sheriff vacated because the bidder did not put up the money, claiming it was made under mistake of fact.

While it may be conceded that the duties of the sheriff in conducting execution sales are ministerial in their nature, yet in each of the two cases just referred to and in many others which might be cited we have recognized in some degree discretionary power lodged in the sheriff in the matter of conducting such sales. In the case of Security Savings Bank v. King, 198 Iowa 1151, 199 N. W. 166, 167, a farm of two hundred thirty-seven acres was sold in separate tracts at a very inadequate price over the objection of the mortgagee, who placed no competitive bids when the property was offered in separate tracts, but had a standing bid of $23,500 for the property as a whole. The aggregate of the separate bids amounted to only $4,000. There was no homestead question involved in the case, but the reasoning and holding of the court, we think, bears on the question of the construction of the statute under consideration. In the King case the construction was on the section of the Code granting to the defendant the right to demand the sale of the property in separate parcels, where he submits a plan of sale. Section 11732 of the Code of 1931 says "the officer shall sell [the property] according to said plan." In the King case the sheriff followed this out to the letter, and his action in that regard was held to be voidable because of the gross abuse of his discretion. In that case, Justice Stevens, speaking for the court, used this language:

"The statute has for its primary purpose the protection of the debtor against the sale of a greater portion of his land than is necessary to satisfy the execution levied thereon. In giving it this effect the interest and rights of the creditor cannot be wholly ignored. The whole of the land was pledged as security for the debt. The mortgage was not taken upon parcels, but upon the land as a whole. The effect of the holding below was to compel the creditor, in order to protect his security, to bid upon each of the separate parcels, and if the aggregate of his bids was less than the value of the entire tract and insufficient to satisfy the execution in full, to waive a portion of his security and to enable the debtor to make redemption to the prejudice of his creditor. This the statute does not contemplate. Its design is, as stated above, to prevent the sale of more of the land than is reasonably necessary to discharge the obligation of the debtor. Its effect, when thus construed, is to make it possible to protect both parties from unnecessary loss. * * * It was not, however, necessary to the preservation of the creditor's security that he offer a competitive bid upon each tract or parcel as offered. Appellant had a right to a sale en masse, unless the sale by parcels was for a sum sufficient to satisfy the execution. It was the duty of the sheriff, when the aggregate amount bid * * * was grossly less than the fair value of the security, to offer the land for sale as a whole. The sale of the land for $4,000 operated as a fraud upon appellant and also upon the judgment debtors. * * * The actual result, if the sale is permitted to stand, will be to satisfy only a fraction of the debt and leave the balance unpaid and to subject any property of the debtors to levy under a general execution therefor. The sheriff failed to perform his statutory duty, which was, when the amount bid for the land in parcels was grossly inadequate, to offer it for sale en masse and to sell it to the highest bidder. This duty was emphasized by the knowledge which he possessed that the appellant would bid $23,500 if the land was so offered."

It will thus be seen by the brief review of our prior decisions relating to the construction of these various statutes that the court has endeavored to construe them, not strictly according to the letter, but according to the spirit and equity of the situation revealed by the facts in each particular case. It seems to us, the object to be attained in requiring the officer to first sell the nonhomestead property is to ascertain the fact whether or not there is sufficient prop-

erty to liquidate the indebtedness and therefore render it unnecessary to disturb the sacred rights of homestead. That object was just as effectively accomplished by the sheriff in the case under consideration by the method used by him as if he had gone through the useless operation of striking off to the first bidder the nonhomestead forty at $2,000. In other words, he had demonstrated, by offering the nonhomestead forty and exhausting the bids therefor, that the highest bid which he was able to receive was the sum of $2,000, while the indebtedness was over $8,000. It was plainly apparent from this demonstration that there would be a deficiency of over $6,000, which would have to be made up by the sale of the homestead property. He then offered the homestead property separately and received a bid of $3,000. He thereby demonstrated that selling the eighty in separate tracts would leave a deficiency still of over $3,400. He then, in his wise discretion, acting in good faith, as we are bound to presume, undertook to ascertain what it would bring if offered *en masse*, and, when so offered, he received a bid within a few dollars of the total amount of the entire indebtedness, or a sum of over $3,200 in excess of the aggregate amount of the bids when offered in separate tracts.

The sheriff, by pursuing the method followed in conducting the sale in this case, demonstrated another fact—that the farm was worth more sold *en masse* than in separate tracts, and our court has twice stated in effect that under such circumstances it is the duty of the sheriff to sell the farm in the way and manner that will bring the greater returns. In doing this, he is benefiting both the debtor and the creditor. To have sold the farm in separate tracts in the instant case would have resulted in leaving a deficiency judgment against the defendant of over $3,400, and would have, at the same time, deprived the plaintiff of an equal sum which he was entitled under his mortgage security to have applied upon the judgment debt. In pursuing the course followed by the sheriff in offering the farm in separate tracts before accepting any of the bids, he ascertained in advance of the striking off and selling of the farm the possibility of obtaining this additional money which went to the protection of both debtor and creditor, and, as stated heretofore in our holdings, the sheriff had some discretionary power and occupied a dual position of agency of both the plaintiff and the defendant, and, as an officer of the court and in the fair and impartial exercise

of his duties, pursued in good faith the course which produced the greatest beneficial results for both parties concerned.

We have heretofore held that the mortgagee was not compelled to place a competitive bid when the property covered by his mortgage was offered in separate tracts. He was entitled to have it sold *en masse* after it had been demonstrated that the homestead property would be required in order to make up the deficiency, and after it had further been demonstrated that the farm when offered as a whole was 33⅓ per cent more valuable than when offered in separate tracts.

The case of Sheakley v. Mechler, 199 Iowa 1390, 203 N. W. 929, 931, contains some statements which might, on first reading, appear to be in conflict with our holding in this case. This was a case of foreclosure of a mortgage and involved a contest over the appointment of a receiver to take possession of and collect the rents and profits from the homestead forty, and in this case the court, speaking through the late Chief Justice De Graff, said:

"The contract in the instant case was executed by the persons having the power to convey the homestead. The contract did expressly waive homestead rights, and stipulated for the appointment of a receiver 'who shall take possession of the mortgaged premises and collect all rents and profits accruing therefrom.' But one question, therefore, calls for an answer: Had plaintiffs exhausted all other property pledged by *the same contract* for the payment of the debt before resorting to the homestead to pay the deficiency on the judgment, if a deficiency existed? How may it be known that a deficiency did exist until a sale of the mortgaged premises on execution? The market value of the real estate cannot be viewed as conclusive, nor can it be made the criterion in determining whether a deficiency will remain.

"In brief, we hold that a receiver under a mortgage may not take possession of the homestead until sale on execution is had, as it cannot be determined until that time with that degree of certainty contemplated by the law that a deficiency exists. The homestead is a solicitude of the law, and this court recognizes the importance of the preservation of the home. The power to mortgage a homestead is qualified by statute, and a judicial sale of the homestead under stipulations in a mortgage is to be enforced for the benefit of the mortgagee as a last resort only."

This language was quoted with approval in Finken v. Schram, 212 Iowa 406, at page 413, 236 N. W. 408, in the opinion by Justice Kindig. This case was also a foreclosure of a mortgage and a contest over the appointment of a receiver for the purpose of collecting the rents and profits from the real estate during the year of redemption and involved the question of homestead.

In each of the cited cases last referred to, the question under consideration was how it could be determined that a deficiency would exist after exhausting the other property of the judgment debtor, thereby rendering it necessary to resort to the rents and profits from the land pledged as security. For many years it was the practice to arrive at the value of the mortgage security by oral testimony which the courts recognized as a very unsatisfactory method, owing to the fact of the wide discrepancy of witnesses as to value, and the method finally laid down by our court as the most satisfactory was to first offer the property for sale at execution sale and in this manner ascertain the value of the mortgage security and determine whether or not the security was adequate or whether a deficiency would exist after exhausting the real estate covered by the mortgage, and this method has been quite generally followed and is considered the better practice.

In the Mechler case and in the Schram case above referred to we have adopted this as the only method of ascertaining the value of the security, and have said that, before a receiver can take possession of the homestead, it must be first determined on execution sale that there will be a deficiency after exhausting all other property, and that there is no other way to determine that question with the degree of certainty contemplated by the law that a deficiency exists. When these cases are read in the light of the purpose for which the language was used, our holding in this case is not in conflict with the reasoning set forth in the Mechler case.

The statutes as to the sale of a homestead must be interpreted in the light of the purpose and intent of the legislature in enacting such laws. We said in an early case:

"The great object in regulating judicial sales, is to make the property bring the greatest amount. This is desirable for both parties." Boyd v. Ellis, 11 Iowa 97, at page 104.

And in the recent case of Arnold v. Murphy, 199 Iowa 934, at page 939, 203 N. W. 387, 390, the court, speaking through Justice Albert, said:

"It is obvious that the real purpose in passing these various statutes, as to the sale of homesteads, was to protect the holder of the homestead against a sacrifice of his property. It is, therefore, provided that in a sale the homestead shall be offered last, and also that if the owner himself does not plat the homestead that the sheriff shall plat it. The very purpose of these requirements is within line of the intent of the legislature to protect the homestead as far as possible, so that it will not be sold unless necessary to the payment of debts for which it is pledged, or is made liable under the statute."

A reading of all our cases will demonstrate conclusively that it has uniformly been the holding of this court in interpreting statutes of this character that the intent and purpose underlying the rule requiring sale by parcels are (1) that no more be sold than necessary to satisfy the debt and (2) to stimulate strife or competition in bidding, and not that the owner may be thus placed in a more advantageous position in making redemption.

If we affirm the holding of the lower court, the result must necessarily follow that in every case where a homestead is involved the mortgagee would be required to place competitive bids when the property was offered in parcels in order to protect his mortgage lien, regardless of the fact that the property when sold as a whole as contained in his mortgage would be of much greater value. It certainly was not within the contemplation of the lawmakers to thus lay down a rule which will permit the debtor to redeem a portion of the security to the prejudice of his creditor. As said in the King case, "This the statute does not contemplate." In the case at bar a deficiency judgment of $177.52 still remained after exhausting all the property, and we have held that under such circumstances, where the mortgage contains a receivership clause, in addition to the real estate, the rents and profits from the homestead itself are liable for the deficiency. Finken v. Schram and Sheakley v. Mechler, supra.

What we hold is that the fact that it was necessary to resort to the sale of the homestead property is ascertained just as effectively when the bids are exhausted, as was done in the case at bar,

as though the bid had been accepted and the property struck off to the bidder, and that the property other than the homestead was thus exhausted in the meaning and the use of the term in section 10155 of the Code, and in the contemplation of law as applied to this statute all other property had been exhausted when, on execution sale, the other property had been offered at sheriff's sale and the bid received was not sufficient to pay the mortgage debt, and that, the sheriff having followed the course which resulted in his receiving an amount for the creditor in excess of the amount which he would have received if the land had been sold in separate tracts, and likewise resulting in an increase in benefits, both to the debtor and creditor, a court of equity should not interfere with the sale.

This is the method which has been followed in so many instances in the sale of property under special execution in mortgage foreclosures in this state in recent years that any other rule would unnecessarily disturb vested property rights and lead to endless litigation over titles to real estate. To the end, therefore, that this matter may be definitely settled in this state, it is the holding of this court that the proper procedure to be followed in the sale of real estate under special execution in the foreclosure of mortgages covering real estate, which includes a homestead, should be that the property other than the homestead shall first be offered in tracts of forty acres or less, and, if no bids are received, or if the bids received when so offered in the aggregate are insufficient to pay the mortgage debt, interest and costs, the entire tract other than the homestead shall then be offered *en masse*, and when so offered, if no bid is received, or if the bid received is insufficient to satisfy the total amount of the debt, interest, and costs, then the homestead tract shall be offered separately, and, if the aggregate of the bids received for the property other than the homestead and the homestead property, when thus offered separately, is equal to, or greater than, the full amount of the judgment debt, interest and costs, the property other than the homestead and the homestead property shall be sold separately, but, if said aggregate of bids, when offered separately, is not equal to or greater than the total amount of the debt, interest and costs, then the entire property shall be offered *en masse*, and, if it is thus ascertained that a greater amount can be realized for said mortgaged premises when so offered as a whole, then the entire tract, including the homestead, shall be sold *en masse*.

From the conclusion we have reached, it necessarily follows that the action of the lower court in sustaining the defendant's motion to set aside the sale was erroneous, and a reversal follows. —Reversed.

All the Justices concur, except KINTZINGER, J.

KINTZINGER, J. (dissenting)—I find myself unable to agree with the foregoing opinion, for the following reasons:

This is an action to foreclose a real estate mortgage upon an eighty-acre farm, forty acres of which constituted defendants' homestead. A decree of foreclosure was duly entered and a special execution issued thereon. Prior to the date of the sheriff's sale, the defendant served notice on the sheriff, demanding that the nonhomestead forty be sold first. At the sale, the sheriff received a bona fide bid of $2,000 for the nonexempt land, but refused to sell it separately. He then offered the homestead forty, and received a bid of about $3,000 therefor, and also refused that. He then offered both forties together and received a lump sum bid of $8,222.85 therefor from the plaintiff. This being more than the aggregate of the separate bids, he sold the entire eighty to the Prudential Insurance Company for that amount. The bid of $2,000 for the nonhomestead forty was made by a person who was ready, able, and willing to pay cash therefor.

The sheriff's return showed the foregoing facts. Thereupon defendants filed a motion to set aside the sheriff's sale on the ground that forty acres of the mortgaged premises constituted defendants' homestead and should have been sold separately, and then only to satisfy a deficiency remaining after exhausting a nonhomestead property. The lower court sustained defendants' motion, and plaintiff appeals.

The sole question raised is the right to sell the homestead forty before selling the other forty included in the mortgage. Section 10150 of the Code provides that:

"The homestead of every family, whether owned by the husband or wife, is exempt from judicial sale, where there is no special declaration of statute to the contrary * * *."

The statutory declaration to the contrary is contained in section 10155 of the Code, which provides that:

"The homestead may be sold to satisfy debts * * * created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, *but then only for a deficiency remaining after exhausting all other property pledged* by the same contract for the payment of the debt." (Italics ours.)

The debt created by the mortgage in question comes within the terms of section 10155. The property pledged by the mortgage is an eighty-acre farm, forty acres of which constitute defendants' homestead. Under the provisions of the two sections referred to, the homestead cannot be sold except "for a deficiency remaining after exhausting all other property pledged."

Many cases are cited by appellant to sustain its contention that the homestead forty can be sold with the nonhomestead forty, if the aggregate of the bids for each forty separately is less than the bid received for both en masse. The cases cited, however, relate only to sales *where no bids whatever were received* for the nonhomestead property when offered separately. The following cases are cited in support of the majority opinion: Burmeister v. Dewey, 27 Iowa 468; Conn. Mut. Life Ins. Co. v. Brown, 81 Iowa 42, 46 N. W. 749; Glenn v. Miller, 186 Iowa 1187, 173 N. W. 135; State Bank v. Brown, 128 Iowa 665, 105 N. W. 49; Security Sav. Bank. v. King, 198 Iowa 1151, 199 N. W. 166; Boyd v. Ellis, 11 Iowa 97; Sheakley v. Mechler, 199 Iowa 1390, loc. cit. 1395, 203 N. W. 929; Finken v. Schram, 212 Iowa 406, 236 N. W. 408, and Arnold v. Murphy, 199 Iowa 934, 203 N. W. 387. An examination of these cases, however, shows they do not support the rule contended for, but simply hold that, where the homestead is pledged with other property, and *no bids* are received for the other property when first offered separately, then the other property may be combined with the homestead and sold together, on the theory that, where no bids are received on the nonhomestead property, when first offered separately, it will be considered "exhausted", and can then be sold with the homestead en masse. An examination of all of these cases will show that not one of them supports the rule that exempt and nonexempt property can be sold en masse, *where a reasonably adequate bid has first been received for the nonexempt property when separately offered for sale.*

Only two of all the cases cited permit the sale of the homestead and nonhomestead property en masse, but the ruling therein was based upon the fact that *no bids* whatever were received upon the nonhomestead property when first offered separately for sale. The

rule permitting the sale en masse in those cases was based upon the assumption that the nonhomestead property was considered exhausted because no bids were received therefor when first offered separately. The only cases cited as supporting this rule are Burmeister v. Dewey, supra; Conn. Mutual Life Ins. Co. v. Brown, supra.

In Glenn v. Miller, supra; State Bank v. Brown, supra; Security Sav. Bank v. King, supra; Boyd v. Ellis, supra, the question of restricting the sale of a homestead to a deficiency remaining, after all other property was exhausted, *is not involved*. They are simply authority for the rule that property may be sold en masse without first offering it in separate tracts, and the question of selling homestead property was not involved.

The remaining cases cited do not support the majority opinion, but, on the contrary, support the rule that homestead property cannot be sold until all other property included in the mortgage has first been disposed of. Sheakley v. Mechler, 199 Iowa 1390, loc. cit. 1395, 203 N. W. 929; Finken v. Schram, 212 Iowa 406, 408, 236 N. W. 408, and Arnold v. Murphy, 199 Iowa 934, 203 N. W. 387.

In the instant case, however, the nonexempt property included in the mortgage had not been exhausted. That forty was unimproved and was first offered separately. A bona fide bid of $2,000, or $50 an acre, was offered therefor and refused. It is not claimed that the amount offered for the nonhomestead forty was inadequate and should therefore have been sold en masse with the homestead.

The statute provides that the homestead forty cannot be sold *except for a deficiency remaining after exhausting the other forty* included in the mortgage. Did the sheriff exhaust all other property pledged before resorting to a sale of the homestead to satisfy the deficiency? It will not do to say that he exhausted such other property, when he failed to sell it after receiving a substantial bid therefor. How can it be known that a deficiency exists until after a sale of the nonhomestead property is first made? It is impossible to determine the amount of the "deficiency" until the nonexempt forty is first sold, as "it cannot be determined until that time with that degree of certainty contemplated by the law that a deficiency exists. The homestead is a solicitude of the law, and this court recognizes the importance of the preservation of the home. * * * A judicial sale of the homestead under stipulations in a mortgage is to be en-

forced for the benefit of the mortgagee as a last resort only." Sheakley v. Mechler, supra, loc. cit. 1395. Under the facts in this case, it was the duty of the sheriff, under the law, to sell the non-homestead forty first, if he received a substantial bid therefor. The homestead could then be sold only to satisfy a deficiency remaining. Any other construction of the statute would render it meaningless. Without this statute, the homestead could not be sold; with the statute, it can be sold only after all other property pledged has been "exhausted".

It is the settled law of this state that, where a portion of the land mortgaged is the homestead, it cannot, under the law, be sold except to supply the deficiency remaining after a sale of the non-exempt property included in the mortgage. Such is the construction given the statute by the following cases, and we are controlled thereby: Lay v. Gibbons, 14 Iowa 377, 81 Am. Dec. 487; Twogood v. Stephens, 19 Iowa 405; Equitable Life Ins. Co. v. Gleason, 62 Iowa 277, 17 N. W. 524; Walther v. Walther, 161 Iowa 560, 143 N. W. 503; Haynes v. Rolstin, 164 Iowa 180, 145 N. W. 336, 52 L. R. A. (N. S.) 540; Kilmer v. Gallaher, 107 Iowa 676, 78 N. W. 685; Moody & Son v. Century Sav. Bank, 239 U. S. 374, 36 S. Ct. 111, 60 L. Ed. 336; Lambert v. Powers, 36 Iowa 18; Bankers Life Assn. v. Engelson, 148 Iowa 594, 126 N. W. 951; Owens v. Hart, 62 Iowa 620, 17 N. W. 898; White v. Rowley, 46 Iowa 680. These cases support the declaration of the statute providing that the homestead cannot be sold except "only for a deficiency remaining after exhausting all other property pledged." Section 10155.

In Twogood v. Stevens, supra, loc. cit. 412, this court said:

" * * * It is the policy of the law, not to allow a homestead to be levied upon and sold, even if otherwise liable, until all other property of the defendant in execution, is first exhausted; that this homestead right is equal, if not superior in dignity to any other legal or vested right, and should not be disturbed, short of a fair sale to the highest bidder, of all the other property."

In Haynes v. Rolstin, supra, loc. cit. 183, this court said:

"The real property involved in the present proceeding was, * * * in part occupied as a homestead. * * * had the mortgagee sought foreclosure during the lifetime of M. D. Haynes, the latter, with his wife, had the right to insist that the property outside the

homestead should first be exhausted. Code section 2979. Twogood v. Stephens, 19 Iowa 405; * * * "

The legislature had a right to prohibit the sale of the homestead if it so desired. In fact, in the absence of section 10155, the homestead would have been absolutely exempt under section 10150. It is obvious that the object to be attained by section 10155 was to permit the owner to save his homestead without being compelled to redeem from a sale of the entire property. It is not for us to say whether this statute is wise or unwise. All we have to do is to construe it. This statute is plain and unambiguous, and the legislative intent should be carried out by the courts. This construction is supported, rather than contradicted, by Sheakley v. Mechler, supra, loc. cit. 1395, cited by appellant. In that case this court said:

"The real question at issue involves the right of occupancy of a homestead by the mortgagor during the year of redemption. May he pledge this right as security for a debt? If not, why not? Section 10150 of the Code, 1924, provides that: 'The homestead of every family * * * is exempt from judicial sale, where there is no special declaration of statute to the contrary.' Clearly a sale under foreclosure is a statutory judicial sale. What is the special declaration of our statute which removes the homestead from the defined exemption? It is: 'The homestead may be sold to satisfy debts * * * created by written contract by persons having the power to convey, expressly stipulating that it shall be liable, but then only for a deficiency remaining after exhausting all other property pledged by the same contract for the payment of the debt.' Section 10155, paragraph 2, Code 1924. The contract in the instant case was executed by the persons having the power to convey the homestead. The contract did expressly waive homestead rights, and stipulated for the appointment of a receiver 'who shall take possession of the mortgaged premises and collect all rents and profits accruing therefrom.' But one question, therefore, calls for an answer: *Had plaintiffs exhausted all other property pledged by the same contract for the payment of the debt,* before resorting to the homestead to pay the deficiency on the judgment, if a deficiency existed? *How may it be known that a deficiency did exist until a sale of the mortgaged premises on execution?* [Italics ours.] * * * The homestead is a solicitude of the law, and this court recognizes the importance of the preservation of the home. The power to mortgage

a homestead is qualified by statute, and a judicial sale of the homestead under stipulations in a mortgage is to be enforced for the benefit of the mortgagee as a last resort only."

This rule is also supported by Finken v. Schram, 212 Iowa 406, 236 N. W. 408, and, Arnold v. Murphy, 199 Iowa 934, 203 N. W. 387.

The lower court held that the homestead property involved in the instant case should not have been sold except for the deficiency remaining after a sale of the nonhomestead forty, a reasonable offer having been received therefor. I think the judgment of the lower court was right, and should be affirmed.